UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
NICOLE VERGARA and BELLA 77 CORP.  :
      *Plaintiffs,*  :  Case No.
      :
      :  Judge:
   -against-  :

TOWN OF BABYLON, NY, TIMOTHY BESEMER, :
individually and in his official capacity as Chief :
Building Inspector of the Town of Babylon; :
ELIZABETH WHITE, individually and in her :  **DECLARATION OF NICOLE**
official capacity as Deputy Commissioner, Planning :  **VERGARA IN SUPPORT OF**
and Development, Building Division, of the Town of :  **PLAINTIFFS' MOTION FOR**
Babylon; RACHEL SCELFO, individually and in her :  **A TEMPORARY RESTRAINING**
official capacity as Commissioner, Planning & :  **ORDER AND PRELIMINARY**
Development, Building Division, of the Town of :  **INJUNCTION**
Babylon; JOSEPH WILSON, individually and in his :
official capacity as Town Attorney of the Town of :
Babylon; and JERRY GUARINO, individually and :
in his official capacity as an Assistant Town :
Attorney of the Town of Babylon; John and Jane :
Does 1-10* :
      :
      *Defendants.*  :
-------------------------------------------------------------------x

I, Nicole Vergara, declare under penalty of perjury that the facts contained in Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction are true and correct to the best of my knowledge.

## PARTIES

1.    I am the owner of Bella 77 Corp., the lessee of property located at 786 Grand Blvd., Deer Park, New York 11729.

2.    Plaintiff Bella 77 Corp. is a corporation incorporated in the State of New York.

3.  There are three major holidays which enable me to make a living in the retail business lingerie: (1) Halloween; (2) Christmas; and (3) Valentine's Day. Between those holidays, a lingerie business can make more sales than in the rest of the year put together — and often making customers who come in during those holidays happy is the best way to develop repeat customers who *do* shop during the off-season.

4.  The work was completed, and the Fire Underwriters Certificate was provided to the Town on or about October 1, 2021 and the Town of Babylon Ordinance requires that the Certificate of Occupancy to be issued within 10 days after alterations are completed. Thus the Town was required to issue the Certificate of Occupancy no later than October 10, 2021[1]

5.  So far Defendants, by refusing to comply with § 213-20(B)., have prevented me from opening the store and conducting business during the Halloween season.

6.  The Christmas season of sales has begun, and again, I am being prevented from earning a living because of the Town's illegal actions.

7.  I am also losing clientele, many whom have turned to other stores to cater to their larger sizes.

8.  I am being irreparably injured at this time, as I will be seeing a full year of not being able to conduct business if the Town is allowed to continue to ban me from selling throughout the Christmas season.

9.  For a period of approximately 12 years immediately prior to the incidents described herein, I operated an adult business within the Town of Babylon catering, in large part, to an

---

[1] See Chapter 213. Zoning, Article III. Permits and Certificates, § 213-20(B). Certificate of occupancy ("A certificate of occupancy shall be applied for at the same time that the building permit is applied for and **shall be issued within 10 days after the erection or alteration of the building shall have been completed**.) (emphasis added)

underserved minority, the Town's transgender, gender non-conforming, and non-binary (or, as sometimes used, "TGNCNB") community[2].

10. Throughout that period I locked horns with the Town of Babylon, as the Town attempted to force my business out and I litigated to protect my rights.

11. Prior to the closing of my prior store within the Town of Babylon, I realized that my continued sale of adult paraphernalia as a substantial portion of my business would be problematic.

12. In order to avoid the issues going forward, I established an "e-commerce" presence on the internet, totally outside the Town of Babylon and not within the County of Suffolk, to sell adult paraphernalia by mail.

13. My "e-store" was not located in the Town of Babylon, the orders were not taken or processed in the Town of Babylon, the merchandise was not stored, shipped, advertised, or sold from within the Town of Babylon and the adult items will not be available to purchase from my physical store in the Town of Babylon, once the Certificate of Occupancy is issued.

14. My "e-store" advertises, sells, and ships its products throughout the United States and is actively engaged in interstate commerce.

15. Eventually, in early 2021 the Town was finally able to shut my business down.

---

[2] Both for the purposes of sex toys and for the lingerie Ms. Vergara now seeks to sell, for sizing and other reasons, traditional stores tend not to serve these populations. Just by way of example, a very tall transgender woman who is seeking stockings is very unlikely to find the right sizes in a traditional lingerie store — let alone many *options* in the right size. But specialty stores like Ms. Vergara's serve these underserved populations.

Unfortunately, there is a historic — and objectively irrational — tendency by law enforcement to associate the TGNCNB community (and especially, transgender women) with crime. Only this year, New York repealed a law that was used to arrest predominantly transgender Black and Latinx women, with officers citing facts like "wearing a skirt" and "waving at a car" as probable cause. *See generally,* Jaclyn Diaz, "New York Repeals 'Walking While Trans' Law," NPR (Feb. 3, 2021), *available at* https://www.npr.org/2021/02/03/963513022/new-york-repeals-walking-while-trans-law. It is unclear at present whether the unique scrutiny — and personal dislike — the Town has for Ms. Vergara and her stores (or any associated suspicions) are flavored by this historic bias. But the patrons of Ms. Vergara's store are disproportionately members of the TGNCNB community.

16. I reside in Nassau County, and the Plaintiff Bella 77 Corp. only operates its mail-order operations, which does include the sale of sexually related merchandise, from within Nassau County, and neither I nor Bella 77 Corp are presently conducting any business within the Town of Babylon or the County of Suffolk.

17. Recognizing that my business model needed to change, I leased space with the intent of opening a lingerie store in the Town.

18. It is my intent that this new business would also cater to the same underserved minority, the Town's transgender, gender non-conforming, and non-binary (or, as sometimes used, "TGNCNB") community

19. As required by the Town Code, I submitted plans and an application for a building permit in order to make the alterations (and obtain a Certificate of Occupancy) such a retail store required.

20. On or about April 2021 I filed a building permit application (Exhibit 1) to make alterations to the premises as required by the Babylon Town Code.

21. Under use, she listed "retail lingerie store".

22. Under the "Purpose of Work" section of the Permit Application, my agent Kelly Bennett wrote the following, "proposed interior alterations; change of use; change of tenant."

23. On June 8, 2021, an attorney on behalf of Cupids Boutique (which is owned and operated by Bella 77 Corp, which corporation is owned by me) sent a letter to the Town of Babylon regarding Application #137260, confirming that Cupids Boutique located at 786 Grand Blvd, Deer Par, NY 11704, "will be strictly for retail use as a lingerie/clothing store [and confirmed that] "[n]o products deemed to be adult-use toys, or any items prohibited by Town code shall be sold or stored." (Exhibit 2).

24. On June 10, 2021, the Town denied my Building Permit Application (Exhibit 3).

25. The denial of the Building Permit Application listed the "Applicant/Owner" as "Cupids Boutique/786 Assoc. Inc." and also set forth the "Proposed Work" as "Interior Alterations for Adult Use".

26. When I became aware of these facts, I attempted to submit a new application, again listing the use as "retail lingerie store."

27. On July 13, 2021, Building Commissioner Rachel Scelfo sent an email to my attorney and was told that I would be required to submit an Affidavit as a supplement to my building permit application, and that I was required to amend my building permit application (Exhibit 4).

28. The email from the Town of Babylon Commissioner of Buildings required me to include the following in the affidavit, "stat[ement] that the premises will not be used as an 'adult use,' as defined in the Town of Babylon Town Code and that I do not intend to sell adult toys or novelties on the premises."

29. Defendant Scelfo, acting on behalf of the Town, required me to attach to my Affidavit, a list of items I intended to sell.

30. Defendant Scelfo, acting on behalf of the Town, also required me to include the language that I would "forego [my] CO [Certificate of Occupancy] should the Chief Building Inspector, upon inspection, determine that [I am] conducting an 'adult use' –as such use is defined in the Town of Babylon Town Code."

31. I followed the instructions of the Town and submitted my revised plan and on August 3, 2021 I mailed the mandated Affidavit (Exhibit 5) and a notarized letter to the Town of Babylon informing the Town of the hardships caused by the closing of my store by the Town and their continuing delays in issuing permits to allow me to open my new store.

32. Attached to the letter was the required inventory of items I intended to sell. (Exhibit 6).

33. That letter states, "I am willing to sign and notarized any and all of the affidavits which Commissioner Scelfo has sent me via email." Id.

34. On September 2, 2021, the Building Inspector and the Commissioner of the Planning and Development of the Town of Babylon granted a Building Permit (#2021-0978) to 786 Associates Inc./John Watral, President, for the property address 786 Grand Boulevard, Deer Park, NY 11729. (Exhibit 7).

35. On September 20, 2021, the Town of Babylon sent an inspector who inspected the premises and subsequently wrote out an "Inspection Request" with the "Inspector's Report" stating, "Final OK Obtain Fire Underwriters Cert."

36. This Inspection Request was signed by "TB", upon information and belief Timothy Besemer, the Chief Building Inspector. (Exhibit 8)

37. On October 1, 2021, the New York Board of Fire Underwriters issued me an Electrical Approval Certificate. (Exhibit 9) which I filed with the Town of Babylon.

38. In order for me to obtain the Certificate of Occupancy, additional preconditions were set forth in the Building Permit, (1) Town of Babylon Plumbing Permit; (2) Final Survey; (3) Fire Underwriters Certificate.

39. I have timely satisfied all of these preconditions.

40. As far as I know, there is no additional precondition to issuing the Certificate of Occupancy required under local or State law.

41. Until a Certificate of Occupancy has been issued, I am not able to occupy and use the property.

42. Despite numerous requests by me, Defendants have failed and refused to issue the Certificate of Occupancy as required the Code.

43. I have a legitimate claim of entitlement to the Certificate of Occupancy.

44. I also have a property interest in the Building Permit that was issued by the Town.

45. I also have a legitimate claim of entitlement to the benefits of the Building Permit which I currently possess.

46. On October 8, 2021 the Town of Babylon's Chief Building Inspector, Timothy Besemer mailed a letter to me and my attorney, (Exhibit 11) in regard to 786 Grand Blvd., Deer Park, NY 11729, SCTM# 0100-67-1-10.020, Building Permit # 2021-0978, stating,

> The above referenced Building Permit [ ] is in jeopardy of being revoked. Please be advised that a hearing has been scheduled pursuant to Town Code Section 89-26 on <u>Tuesday, October 19, 2021 at 2:30PM in Town Attorney's Conference Room.</u>
>
> The purpose of the hearing is to determine whether there was an unauthorized sale and/or advertising of prohibited merchandise during the term of the permit, or a false statement or misrepresentation as to a material fact in the application, plans or specifications on which the building permit was based, or any other finding pursuant to Chapter 213 or Chapter 89 of the Town Code.

47. It is evident that the Town intends to force me into a "hearing" so that it can then at that point, interrogate me and then make a determination of whether I committed a crime by operating a business without a Certificate of Occupancy.

48. The Town is required to provide me with specific facts and details related to the allegations against me, and it has failed to do so, conveniently, to its benefit, and to my, and my business' detriment.

49. On October 18, 2021 my attorney, Richard Rosenthal, sent a letter (Exhibit 12 to the Town of Babylon informing the Town that he required documents and information on the Town's hearing procedures, and thus required an adjournment of the hearing.

50. Attorney Rosenthal asked the Town to provide him with a citation in the Babylon Town Code which would inform about the procedural rules for the hearing.

51. He also asked the Town to provide him with a copy of the exact violations the Town was alleging were committed by me.

52. He also requested the dates, times, and places of the alleged unauthorized sale and/or advertising of prohibited merchandise, and the exact merchandise alleged to have been sold or advertises, and the exact manner in which the Town became aware of the alleged unauthorized sale or advertising, along with a copy of the complaint.

53. Additionally, he asked the Town to provide him with a copy of the exact violations being alleged, including the dates, times and places of any alleged false statement or misrepresentation as to a material fact in the permit application including what material fact, I was alleged to have made a false statement or misrepresentations regarding.

54. Attorney Rosenthal asked the Town to inform him of who will be presiding over the hearing, whether there will be a record of the proceedings, who will be acting as prosecutor, what the quantum of proof required is, and who bears the burden of proof and burden of persuasion, and where he could find the rules of evidence applicable to such a hearing.

55. Defendants never responded to any of these requests.

56. On November 4, 2021, the Town of Babylon Chief Building Inspector Timothy Besemer sent an "Amended Notice" (Exhibit 15) to me via my attorney Richard Rosenthal.

57. The Amended Notice again stated that my "Building Permit [ ] is in jeopardy of being revoked," and that there would be a hearing on November 17, 2021 "pursuant to Town Code Section 89-26 * * * ."

58. The Amended Notice also stated the purpose of the hearing was to determine,

    a. "whether there was an unauthorized sale and/or advertising of prohibited merchandise during the term of the permit * * * ."

    b. Whether there was "a false statement or misrepresentation as to a material fact in the application, plans, or specifications on which the building permit was based;

    c. "any other finding pursuant to Chapter 213 or Chapter 89 of the Town Code."

59. The Amended Notice stated,

    > [O]n or about October 4, 2021 and continuing thereafter, the owner and/or person in charge of the abovementioned property did cause, permit or allow the advertising and/or sale of adult paraphernalia and/or adult entertainment as a substantial or significant portion of its business, merchandise, stock-in-trade without maintaining a valid building permit or certificate of occupancy issued by the Town for an adult use.

60. Enclosed in the Amended Notice were seven photographs, purportedly "of the above-referenced advertisements and/or stock in trade."

61. The pictures referenced by, and attached to the Amended Notice, were screenshots taken off the internet from my Instagram account, all of which had been posted to my Instagram account prior to the closing of my previous store— and thus prior to the permit application.

62. My Attorney, Richard Rosenthal, sent a second letter (Exhibit 17) to the Town on November 9, 2021 again requesting the same information he sought in the first letter, and which the Town Attorney Joseph Wilson had promised would be provided

63. To date, Defendants still have not responded or provided any of the information requested.

64. The November 17, 2021 hearing was again continued until December 14, 2021 at my request, due to me having to travel for a family emergency.

65. Because Defendants have not provided any rules and procedures for the hearing, or anything suggesting probable cause, my attorney, on my behalf, sent a letter (Exhibit 12) invoking my Fifth Amendment rights.

Executed this 1st day of December 2021, at New York, New York.

*Nicole Vergara*
Nicole Vergara

Sworn to before me on this
1st day of December 2021.

*Richard Bruce Rosenthal*
Richard Bruce Rosenthal
Notary Public, State of New York
No. 02R04700683
Qualified in Queens County
Commission Expires Jan.31, 2022