UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                              :

NICOLE VERGARA and BELLA 77 CORP.    :
                              :

       *Plaintiffs,*            :    Case No. 21-cv-06667-KAM-ARL
                              :

                              :    **FIRST AMENDED COMPLAINT**

      -against-            :

                              :    **JURY TRIAL DEMANDED**

TOWN OF BABYLON, NY, TIMOTHY     :
BESEMER, individually and in his official  :
capacity as Chief Building Inspector of the :
Town of Babylon; RACHEL SCELFO,    :
individually and in her official capacity as  :
Commissioner, Planning & Development,   :
Building Division, of the Town of Babylon; :
and JOSEPH WILSON, individually and in  :
his official capacity as Town Attorney of the :
Town of Babylon; John and Jane Does 1-10[*] :
                              :

       *Defendants.*           :

* Such names being fictitious and intended to :
be parties whose identities are as yet unknown. :
                              :
-------------------------------------------------------------x

> When correctly viewed,
> Everything is lewd.
> (I could tell you things about Peter Pan,
> And the Wizard of Oz – there's a dirty old man!)[1]

**The Town of Babylon defines an ADULT NOVELTY SHOP as:**

> Any establishment which offers for viewing, sale or rental, for any
> form of consideration or gratuity instruments, devices, gear,
> equipment, apparatus, accoutrements or other appurtenances
> designed, used or marketed primarily for stimulation of human
> genital organs or sadomasochistic use or abuse; and/or massage or

---

[1] Lyrics from song "Smut," Tom Lehrer (1965).

any other treatment or manipulation of the human body which occurs as a part of, or in connection with, with regard to the human body, actual or simulated depictions or descriptions of: (1) Genitals in a state of sexual stimulation or arousal; and/or (2) Acts of masturbation, sexual intercourse or sodomy; and/or (3) Fondling or other erotic touching of genitals, pubic region, buttocks, anus or female breast or where any person providing such massage, treatment or manipulation exposes specified anatomical areas of his or her body, and/or instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse as a substantial or significant portion of its business, merchandise and/or stock-in-trade.

Town of Babylon Code 213-373 (cleaned up and consolidated by incorporating definitions).


Plaintiffs Nicole Vergara and 786 Grand Blvd. Corp. (together, "Plaintiffs"), by and through their attorneys, for their Complaint against Defendant Town of Babylon, New York, allege as follows:

## PRELIMINARY STATEMENT

1.　　The Town of Babylon, for its own reasons, finds sex distasteful — and more generally, attempts to prohibit the "substantial" sale of books, dvd's and other constitutionally protected forms of expression, as well as a limited category of sex toys[2] within its borders.

2.　　In doing so, Babylon has swept up an unbelievable array of everyday (non-sex-related) objects — and *failed* to sweep up some of what anyone understands as sex toys.  That ultimately

---

[2] Defined, at least in part contrary to common understandings, as:  "instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse." Babylon Town Code 213-377(B).

leaves much, if not all, of the enforcement of that ban in the boundless discretion of town officials.

3.      Enter Plaintiff:  Plaintiff Nicole Vergara is not the Town of Babylon's favorite person. Quite the opposite.

4.      She used to run an "adult"  store in Babylon, but that store was ultimately shut down as part of an enforcement campaign, notwithstanding that the items constituting "Adult" merchandise in her prior store never reached the percentage as to constitute a substantial portion of her business.

5.      Thus, earlier this year, she set about aiming to open a new store, that sells primarily lingerie.

6.      But the Town has now begun a new, retaliatory campaign, placing everything Ms. Vergara does — in the words of its Assistant Town Attorney — "under a microscope."  Worse than that, the Town held her livelihood hostage in exchange for Ms. Vergara accepting limitations that *no other business* in the Town of Babylon faces.  That is, everyone in Babylon but Ms. Vergara may sell *some* books, dvd's and/or sex toys.

7.      In fact, a "Spencer's Gifts" — in their own words, "If you're looking for sex toys for women and men, Spencer's is your best bet[3] — has just broken ground literally across the street from Ms. Vergara's store.

8.      The documents the Town has generated, for all practical purposes, might as well have explicitly said, "we are treating Ms. Vergara as a class of one."

---

[3] "Shop Sex Toys," Spencer's (accessed Feb. 21, 2022), available at https://www.spencersonline.com/section/naughty/2352.uts.

9.    Similarly, the process the Town tried to use to shut Ms. Vergara's new business down all but declared "we demand you participate in a hearing in order to give us probable cause to prosecute you, and if you do not, we will use your silence as probable cause to stop your business from ever opening"

10.    Because of these retaliatory exercises of power, and a malicious rush to stop Ms. Vergara from eking out *any* livelihood within the borders of Babylon, this case presents an almost staggering array of constitutional issues.

11.    But one thread is clear throughout:  Babylon has unconstitutionally targeted Ms. Vergara and has and will continue to attempt to drum her out of town, for her unrepentant arrogance of exercising her First Amendment rights.

12.    Because the Constitution does not permit any of this, the Court should step in, and make clear that one set of laws apply to everyone in Babylon, no matter how much the Town dislikes them.

13.    This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutional validity and application of certain Town of Babylon zoning ordinances, and on issuance of certificates of occupancy and/or building permits. There are substantial bona fide disputes and questions to be resolved concerning provisions of the Town of Babylon ordinance which allegedly apply to Plaintiff's business.

14.    While Plaintiff now has her certificate of occupancy after the parties resolved the preliminary issues by stipulation (after Plaintiffs filed a motion for injunctive relief and the Court

set a briefing schedule), damages on that count — and injunctive, declaratory, and other relief related to Babylon's Town Code more generally — remain.[4]

15.     Plaintiff further seeks a declaratory judgment specifically finding any regulations or ordinances designed to prohibit Plaintiff from operating a business in a properly zoned area of the Town of Babylon unconstitutional. Further, Plaintiff seeks a declaration of unconstitutionally against any zoning ordinance, business licensing ordinance or building code ordinance which effectively prohibits Plaintiff from operating a lawfully and constitutionally protected business in a proper area of Defendant Town. Such ordinances and regulations deny Plaintiffs' substantive and procedural due process in that they unduly interfere with the use of real property, cause deprivation of a protected use, and are arbitrary, capricious, unreasonable and unrelated to any legitimate State interest. Plaintiff further seeks relief based on the denial of equal protection, privacy, and access to Courts (for prompt judicial review).

## PARTIES

16.     Plaintiff Nicole Vergara is the lessee of property located at 786 Grand Blvd., Deer Park, New York 11729 and the owner of Plaintiff Bella 77 Corp..

17.     Plaintiff Bella 77 Corp. is a corporation incorporated in the State of New York that does business under the tradename "Cupids Boutique".

18.     Defendant Town of Babylon, NY is a municipality located in Lindenhurst, New York.

19.     Defendant Timothy Besemer is the Chief Building Inspector of the Town of Babylon.

---

[4] This description is intended to be general, and is not intended to describe any limits of Plaintiffs' claims, which are more fully described below.

20.    Upon information and belief, Defendant Besemer has final decision making authority as to building-related permits and certificates in the Town of Babylon.

21.    Defendant Rachel Scelfo is the Commissioner, Planning and Development, Building Division, of the Town of Babylon (for convenience, the "Building Commissioner")

22.    Upon information and belief, Defendant Scelfo has final supervisory decision making authority over all building-related matters in the Town of Babylon.

23.    Defendant Joseph Wilson is the Town Attorney of the Town of Babylon

24.    Defendant John & Jane Does 1-10 are intended to be employees of the Town of Babylon whose identities are not presently known to Plaintiffs

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over Plaintiffs' constitutional claims pursuant to 28 U.S.C. § 1331.

26.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

27.    This court has jurisdiction over the State Mandamus claim, under the supplemental jurisdiction provision of the Judicial Code, 28 U.S.C. § 1367(a).

28.    This Court has the authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331, declaratory relief under 28 U.S.C. §§ 2201 and 2202, the claim for damages under 42 U.S.C. § 1983, and to grant costs, including reasonable attorney's fees, under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

## FACTUAL ALLEGATIONS

29.     For a period of approximately 12 years immediately prior to the incidents described herein, Plaintiff Nicole Vergara operated an adult business within the Town of Babylon, catering, in large part, to an underserved minority: the Town's transgender, gender non-conforming, and non-binary (or, as sometimes used, "TGNCNB") community.[5]

30.     Throughout that period the Plaintiff and the Town locked horns as the Town attempted to force the business out and the Plaintiff litigated to protect her rights.

31.     Eventually, in early 2021 the Town was finally able to shut that business down.

32.     Assistant Town attorney, Jerry Garguilo, in discussing that period and her current attempt to open a new business within the Town of Babylon said to Plaintiffs' attorney Richard Rosenthal on multiple occasions, in sum and substance, that Plaintiff "operated for 12 years without a Certificate of Occupancy, and used every means possible to fight us, and she should get down on her knees and thank us, instead she is trying to open another store, and we will not allow it."

---

[5] Both for the purposes of sex toys and for the lingerie Ms. Vergara now seeks to sell, for sizing and other reasons, traditional stores tend not to serve these populations. Just by way of example, a very tall transgender woman who is seeking stockings is very unlikely to find the right sizes in a traditional lingerie store — let alone many *options* in the right size. But specialty stores like Ms. Vergara's serve these underserved populations.

Unfortunately, there is a historic — and objectively irrational — tendency by law enforcement to associate the TGNCNB community (and especially, transgender women) with crime. Only this year, New York repealed a law that was used to arrest predominantly transgender Black and Latinx women, with officers citing facts like "wearing a skirt" and "waving at a car" as probable cause. *See generally,* Jaclyn Diaz, "New York Repeals 'Walking While Trans' Law," NPR (Feb. 3, 2021), *available at* https://www.npr.org/2021/02/03/963513022/new-york-repeals-walking-while-trans-law. It is unclear at present whether the unique scrutiny — and personal dislike — the Town has for Ms. Vergara and her stores (or any associated suspicions) are flavored by this historic bias. But the patrons of Ms. Vergara's store are disproportionately members of the TGNCNB community.

33. The same Town Attorney told Richard Rosenthal that if Plaintiff ever does get the Certificate of Occupancy, she will be "under a microscope."

34. That statement was intended to convey, and did convey, that Plaintiff would face scrutiny a similarly situated person seeking to run an identical business would not.

35. It was intended to convey, and did convey, that the ***reason*** for that scrutiny was Plaintiff's prior act of "us[ing] every possible means to fight [the Town]."

36. Recognizing that her business model needed to change, after the closing of her store, the Plaintiff leased new space with the intent of opening a lingerie store in the Town.

37. It is Plaintiffs' intent that this new business would also cater (even more so than before) to the same underserved minority: the Town's TGNCNB community (*see* note 5, above).

***The Town alters Plaintiffs' Permit Application,
and denies it based on the Town's alteration.***

38. As required by the Town Code, on or about April 2021, the Plaintiff submitted plans and an application for a building permit (Exhibit 1) in order to make the alterations (and obtain a Certificate of Occupancy) such a retail store required. Under use, Vergara listed "retail lingerie store".

39. Under the "Purpose of Work" section of the Permit Application, Plaintiffs' agent Kelly Bennett wrote the following, "proposed interior alterations; change of use; change of tenant."

40. Sometime after this Permit Application was signed and notarized and submitted to the Town of Babylon, the "Purpose of Work" section was crossed out by an employee of the Town of Babylon, John or Jane Doe #1 (who may or may not be one of the named Defendants), and the following language was placed in its stead, "Erect 2900 ft interior alteration for "Cupid Boutique."

41.     On June 8, 2021, Stephen W. Kretz, an attorney working on behalf of Cupids Boutique, which is the tradename that Bella 77 Corp. operates under, which corporation is owned by Nicole Vergara, sent a letter to the Town of Babylon regarding Application #137260, confirming that Cupids Boutique located at 786 Grand Blvd, Deer Park, NY 11704, "will be strictly for retail use as a lingerie/clothing store [and confirmed that] "[n]o products deemed to be adult-use toys, or any items prohibited by Town code shall be sold or stored." (Exhibit 2).

42.     The Town Code, however, has no such prohibition that "no products deemed to be adult-use toys … shall be sold or stored."

43.     Nor are there any "items [the sale of which is] prohibited by the Town code."

44.     Instead, the Town Code prohibits stores not properly zoned for adult use from engaging in "substantial" sales of certain items.

45.     On June 10, 2021, in furtherance of their stated intent to prevent Plaintiffs from doing business in the Town of Babylon, and, upon information and belief, based solely upon the unauthorized change made by the Town Employee, the Town denied the Building Permit Application on the basis that the premises not being zoned for "adult use" (Exhibit 3).

46.     The denial of the Building Permit Application, listed the "Applicant/Owner" as "Cupids Boutique/786 Assoc. Inc." and also set forth the "Proposed Work" as "Interior Alterations for *Adult Use*" (emphasis added).

47.     Under the Town of Babylon zoning laws operating a lingerie store is not an adult use and, as noted above, Plaintiffs did ***not*** list "adult use" in their application — it was added by the Town Employee.

48.     When Vergara became aware of these facts she attempted to submit a new application, again listing the use as "retail lingerie store".

49.     On July 13, 2021, Building Commissioner Rachel Scelfo sent an email to plaintiffs'

attorney and her building permit expediter stating that, in order to obtain a building permit,

Plaintiffs would be required to submit an Affidavit as a supplement to their building permit

application, and to amend her building permit application (Exhibit 4).

50.     The email from the Town of Babylon Commissioner of Buildings required the Plaintiffs

to include the following in the affidavit, "stat[ement] that the premises will not be used as an

'adult use,' as defined in the Town of Babylon Town Code and that she does not intend to sell

adult toys or novelties on the premises."

51.     Defendant Scelfo, acting on behalf of the Town, required Plaintiffs to attach to their

Affidavit, a list of items she intends to sell.

52.     Defendant Scelfo, acting on behalf of the Town, also required Plaintiffs to include the

language that they would "forego her CO [Certificate of Occupancy] should the Chief Building

Inspector, upon inspection, determine that she is conducting an 'adult use' –as such use is

defined in the Town of Babylon Town Code."

53.     This subjected Plaintiffs to a unique restriction in all of Babylon, faced by no one else.[6]

54.     Plaintiffs followed the instructions of the Town and submitted her revised plan and on

August 3, 2021 Nicole Vergara mailed the mandated Affidavit (Exhibit 5) and a notarized letter

to the Town of Babylon informing the Town of the hardships caused by the closing of her store

by the Town and their continuing delays in issuing permits to allow her to open her new store.

Attached to the letter was the required inventory of items she intended to sell.  (Exhibit 6).

---

[6] This is because the statement made it so that Plaintiffs' Certificate could be revoked upon *any*
adult use, while the Town Code — and thus everyone else in Babylon — only risked a certificate
upon a(n ill-defined) "substantial" adult use.

55.     That letter states, "I am willing to sign and notarized any and all of the affidavits which Commissioner Scelfo has sent me via email."  Id.

56.     On August 5, 2021 the plaintiffs re-filed the "new" application with the Town of Babylon Building Division along with the required fee, for which the Town assigned a new application number (138586) and issues a receipt therefor (Exhibit 7).

57.     On September 2, 2021, the Building Inspector and the Commissioner of the Planning and Development of the Town of Babylon granted a Building Permit (#2021-0978) to 786 Associates Inc./John Watral, President, for the property address 786 Grand Boulevard, Deer Park, NY 11729.  (Exhibit 8).  Plaintiffs thereafter began doing the alterations to the premises as set forth in the plans submitted as a part of the permit application.

58.     After the work was completed, on September 20, 2021, the Town of Babylon sent an inspector who inspected the premises and subsequently wrote out an "Inspection Request" with the "Inspector's Report" stating, "Final OK Obtain Fire Underwriters Cert."

59.     This Inspection Request was signed by "TB", upon information and belief Timothy Besemer, the Chief Building Inspector.  (Exhibit 9)

60.     On October 1, 2021, the New York Board of Fire Underwriters issued Nicole Vergara an Electrical Approval Certificate. (Exhibit 10) which Plaintiffs filed with the Town of Babylon.

61.     As a condition for Plaintiffs to obtain the Certificate of Occupancy, the Building Permit required the Plaintiffs to obtain (1) a Town of Babylon Plumbing Permit; (2) a Final Survey; (3) a Fire Underwriters Certificate.

62.     Plaintiffs have satisfied all of these conditions.

63.     There are no additional prerequisites to issuing the Certificate of Occupancy required under local or State law.

64.     On December 2, 2021, after the Court set a briefing schedule on Plaintiffs' motion seeking a preliminary and permanent injunction requiring the Town to issue the Certificate of Occupancy, the Town issued the Certificate of Occupancy.

### *The Town refused to perform its ministerial duty to issue a Certificate of Occupancy.*

65.     Until a Certificate of Occupancy had been issued, Plaintiffs were not able to occupy and use the property.  See Chapter 213. Zoning, Article III. Permits and Certificates, § 213-20(E) ("No building or premises for which a certificate of occupancy is required may be occupied until such a certificate shall have been issued.").

66.     The Town Ordinance required the Certificate of Occupancy to be issued within 10 days after alterations are completed.  *See* Chapter 213. Zoning, Article III. Permits and Certificates, § 213-20(B). Certificate of occupancy ("A certificate of occupancy shall be applied for at the same time that the building permit is applied for and ***shall be issued within 10 days after the erection or alteration of the building shall have been completed***.) (emphasis added)

67.     More than ten days had elapsed since the Plaintiffs met the only remaining obligation by providing the Fire Underwriters Certificate to the Town, and, despite numerous requests by Plaintiffs, Defendants failed and refused to issue the Certificate of Occupancy, as required by the Code until the Plaintiffs' filed a motion seeking a preliminary and permanent injunction requiring the Town to issue the Certificate of Occupancy.

68.     The Town did not have the discretion to deny Plaintiffs a Certificate of Occupancy because the Code required the Town to issue the Certificate within 10 days after the alteration of the building is complete.  *See* Chapter 213. Zoning, Article III. Permits and Certificates, § 213-20(B). Certificate of occupancy ("A certificate of occupancy shall be applied for at the same time

that the building permit is applied for and ***shall*** be issued within 10 days after the erection or alteration of the building shall have been completed.) (emphasis added).

69.     The Town did not have the discretion to require an Affidavit from Plaintiffs as part of the Building Permit Process.

***The Town demanded Plaintiffs appear for a process-free, conflicted "hearing," on pain of losing their Building Permit.***

70.     On October 8, 2021 the Town of Babylon's Chief Building Inspector, Timothy Besemer mailed a letter to Ms. Vergara and her attorney, in regard to 786 Grand Blvd., Deer Park, NY 11729, SCTM# 0100-67-1-10.020, Building Permit # 2021-0978, (Exhibit 11) stating,

> The above referenced Building Permit [ ] is in jeopardy of being revoked.  Please be advised that a hearing has been scheduled pursuant to Town Code Section 89-26 on <u>Tuesday, October 19, 2021 at 2:30PM in Town Attorney's Conference Room.</u>
>
> The purpose of the hearing is to determine whether there was an unauthorized sale and/or advertising of prohibited merchandise during the term of the permit, or a false statement or misrepresentation as to a material fact in the application, plans or specifications on which the building permit was based, or any other finding pursuant to Chapter 213 or Chapter 89 of the Town Code.

71.     The Town's code at §89-26 is the only section of the Town's code which addresses the hearing for the permit revocation.

72.     Section 89-26(A) appears to give sole and unilateral authority to the Building Inspector to revoke a permit in the following instances,

> The Building Inspector may revoke a permit or approval issued under the provisions of this chapter in the following instances:
>
> (1) Where he or she finds that there has been any false statement or misrepresentation as to a material fact in the

application, plans or specifications on which the building permit was based; or

(2) Where he or she finds that the building permit was issued in error and should not have been issued in accordance with the applicable law; or

(3) Where he or she finds that the work performed under the permit is not being prosecuted in accordance with the provisions of the application, plans or specifications; or

(4) Where the person to whom a building permit has been issued fails or refuses to comply with a stop-work order issued by the Building Inspector.

73.     The only information provided in the entire Code on the hearing for revocation of a building permit is contained in Section 89-26(B) of the Town Code.

74.     This Code section informs Plaintiffs that "[s]uch revocation shall take place after notice to the applicant and an opportunity for the applicant to be heard by the **Building Inspector**." (emphasis added).

75.     The Code simply sets forth the notice and opportunity language of *Mathews. See Tsinberg v. City of New York*, 2021 U.S. Dist. LEXIS 56958, *11 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348-49, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171-72, 71 S. Ct. 624, 95 L. Ed. 817 (1951) ("'The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'").

76.     At the very minimum, the Town is required to provide Plaintiffs with specific facts and details related to the allegations against her, and it has failed to do so.

77.     The Town does not have the discretion to conduct a Permit revocation hearing without the due process protections of meaningful notice and a meaningful opportunity to be heard before a neutral decisionmaker.

78.     On October 18, 2021, in response to the October 8, 2021 Notice, Plaintiffs' attorney, Richard Rosenthal, sent a letter (Exhibit 12) to the Town of Babylon informing the Town that he required documents and information on the Town's hearing procedures, and thus required an adjournment of the hearing.

79.     Attorney Rosenthal asked the Town to provide him with a citation in the Babylon Town Code which would inform about the procedural rules for the hearing.

80.     He also asked the Town to provide him with a copy of the exact violations the Town was alleging were committed by Plaintiffs.

81.     He also requested the dates, times, and places of the alleged unauthorized sale and/or advertising of prohibited merchandise, and the exact merchandise alleged to have been sold or advertised, and the exact manner in which the Town became aware of the alleged unauthorized sale or advertising, along with a copy of the complaint.

82.     Additionally, he asked the Town to provide him with a copy of the exact violations being alleged, including the dates, times and places of any alleged false statement or misrepresentation as to a material fact in the permit application including what material fact Ms. Vergara was alleged to have made a false statement or misrepresentations regarding.

83.     Attorney Rosenthal asked the Town to inform him of who will be presiding over the hearing, whether there will be a record of the proceedings, who will be acting as prosecutor, what the quantum of proof required is, and who bears the burden of proof and the burden of persuasion, and where he could find the rules of evidence applicable to such a hearing.

84.     Defendants never responded to any of these requests.

85.     On November 4, 2021, Plaintiffs' attorney received an "Amended Notice" from Town of Babylon Chief Building Inspector Timothy Besemer (Exhibit 15) to Ms. Vergara

86.     The Amended Notice again stated that Plaintiffs' "Building Permit [ ] is in jeopardy of being revoked," and that there would be a hearing on November 17, 2021 "pursuant to Town Code Section 89-26 * * * ."

87.     The second Amended Notice also stated the purpose of the hearing was to determine,

    a.  "whether there was an unauthorized sale and/or advertising of prohibited merchandise during the term of the permit * * * ."

    b.  Whether there was "a false statement or misrepresentation as to a material fact in the application, plans, or specifications on which the building permit was based;

    c.  "any other finding pursuant to Chapter 213 or Chapter 89 of the Town Code."

87.     The second Amended Notice stated,

> [O]n or about October 4, 2021 and continuing thereafter, the owner and/or person in charge of the abovementioned property did cause, permit or allow the advertising and/or sale of adult paraphernalia and/or adult entertainment as a substantial or significant portion of its business, merchandise, stock-in-trade without maintaining a valid building permit or certificate of occupancy issued by the Town for an adult use.

88.     Enclosed in the second Amended Notice were seven photographs, purportedly "of the above-referenced advertisements and/or stock in trade."

89.     The pictures referenced by, and attached to the Amended Notice, were screenshots taken off the internet from Plaintiffs' Instagram account, all of which had been posted to the account prior to the closing of Plaintiffs' previous store — and thus prior to the permit application.

90.     Attorney Rosenthal sent another letter (Exhibit 16) to the Town on November 9, 2021 again requesting the same information he sought in the first letter, and which the Town Attorney Joseph Wilson had promised would be provided.

91.     Defendants did not respond or provide any of the information requested.

92.	Because Defendants had not provided any rules and procedures for the hearing, or anything suggesting probable cause, Plaintiffs sent a letter on November 29, 2021 (Exhibit 18) invoking her Fifth Amendment rights.

93.	Plaintiffs commenced this suit immediately after.

94.	On December 2, 2021 after the Court set a briefing schedule on Plaintiffs' motion seeking a preliminary and permanent injunction requiring the Town to issue the Certificate of Occupancy, the Town withdrew their Notice.

***The Town Code vaguely defines "adult use,"
but does not ban it altogether.***

95.	The Town has enacted an ordinance (Chapter 213. Zoning, Article XXXI. Adult Use District, Sections 213-376 through 213-381) that is ostensibly intended to ameliorate the secondary effects of sexually oriented businesses by limiting where such businesses can be located and creating and an Adult Use District.

96.	The Town of Babylon Town Code, 213-377 contains definitions of "adult use".

97.	The Babylon Town Code defines "Adult Novelty Shops" are "[a]ny establishment which offers for viewing, sale or rental, for any form of consideration or gratuity, adult entertainment and/or adult paraphernalia as a substantial or significant portion of its business, merchandise and/or stock-in-trade."  213-377(A).

98.	The Babylon Town Code defines an "Adult Store" is "[a]n establishment having, as a substantial or significant portion of its merchandise and/or stock-in-trade of adult entertainment, DVDs, CDs or computer games and videotapes, paraphernalia or novelties or adult materials of any type, objects or materials used for sexual purposes, or objects which bear a practical resemblance to human sex organs."  213-377(A)Pursuant to Section 213-377,

> (1) "Substantial or significant portion" shall be determined using the following considerations:

(a) Amount of floor area and basement space accessible to customers and allotted to adult entertainment of any type, generally, or as compared to the total floor area and basement space accessible to customers; and/or

(b) Amount of adult entertainment stock-in-trade of any type accessible to customers, generally, or as compared to total stock accessible to customers; and/or

(c) Revenues derived from adult entertainment of any type, generally, or as compared to total revenues; and/or

(d) Advertising devoted to adult entertainment of any type, generally, or as compared to total advertising; and/or

(e) Use of the establishment for adult entertainment of any type, generally, or as compared to total use thereof.

(2) However, notwithstanding the above considerations, the following shall be conclusive in determining substantial or significant portion:

(a) Forty percent or more of floor area and basement space accessible to customers allotted to adult entertainment of any type; and/or

(b) Forty percent or more of its stock-in-trade in adult entertainment materials of any type; and/or

(c) Forty percent or more of its gross income derived from adult entertainment of any type; and/or

(d) Forty percent or more of its advertising devoted to adult entertainment of any type; and/or

(e) Forty percent or more of its business, generally, engaged in adult entertainment of any kind.

99.    "Adult Entertainment" as set forth in the Town Code at Section 213-377(B),

Includes the causing, permitting or allowing of:

(1) Offering printed materials, photographic reproductions or live performances which applying contemporary community standards, and when taken as a whole, appeal to the prurient interest, are patently offensive and lack serious literary, artistic, political or scientific value and which are characterized by an emphasis on persons who appear in a state of nudity; and/or which are characterized by an emphasis on persons who expose specified anatomical areas or engage in depiction or description of specified sexual activities; and/or

(2) Conduct by employees who, as part of their employment, expose to patrons specified anatomical areas; and/or by two or more persons who congregate, associate or consort for purposes of specified sexual activities, exposure of specified anatomical areas or activities when one or more of them is in a state of nudity; and/or

(3) Offering paraphernalia designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse; and/or massage or any other treatment or manipulation of the human body which occurs as a part of, or in connection with, specified sexual activities or where any person providing such massage, treatment or manipulation exposes specified anatomical areas of his or her body.

100.    "Adult paraphernalia" is defined by the Town Code as "instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse." See 213-377(B).

***Plaintiffs change their business model, close the old store, and seek a building permit to create a new business.***

101.    Prior to the closing of Plaintiffs' prior store within the Town of Babylon Plaintiffs realized that her continued sale of adult paraphernalia within the Town of Babylon, as a substantial portion of her business, would be problematic.

102.    In order to avoid the issues going forward Plaintiffs established an "e-commerce" presence on the internet, totally outside the Town of Babylon and not within the County of Suffolk, to sell adult paraphernalia by mail.

103.    Plaintiffs' "e-store" is not located in the Town of Babylon, the orders are not taken or processed in the Town of Babylon, the merchandise is not stored, shipped, advertised or sold

from within the Town of Babylon and the adult items will not be available to purchase from plaintiffs' physical store in the Town of Babylon, once the Certificate of Occupancy is issued.

104.    Plaintiff Nicole Vergara resides in Nassau County and Plaintiff Bella 77 Corp. only operates its mail-order operations, which does include the sale of sexually related merchandise, from within Nassau County, and neither are conducting any business within the Town of Babylon or the County of Suffolk.

105.    Accordingly, the Town of Babylon lacks jurisdiction to regulate the Plaintiffs' operations occurring outside the geographic jurisdiction of the Town of Babylon and having no nexus to the Town of Babylon

106.    The Plaintiffs' mail-order customers are located throughout the United States their "e-store" advertises, sells and ships its products, throughout the United States and is actively engaged in interstate commerce.

107.    Plaintiffs Nicole Vergara and Bella 77 Corp. are the owners of Cupid's Boutique, a retail establishment which sells, among other things,  presumptively protected First Amendment materials, including videotapes, magazines, DVD's and books which depict or describe nude or partially clothed persons and/or sexual activity,  paraphernalia and objects related to sexual activity, the marketing of which is presumptively protected under the First Amendment and also includes a substantial assortment of items which are not classified as adult items, including videotapes, DVD's and books, lingerie, swimwear, other clothing articles, shoes, oils, lotions and novelty items.

108.    At the time this action was commenced, § 213 of the Town of Babylon code, included definitions of certain classes of business, as follows:

**§ 213-377. Definitions and word usage. [Amended 7-19-2005 by L.L. No. 19-2005; 11-8-2007 by L.L. No. 21-2007; 11-17-2010 by L.L. No. 35-2010; 5-22-2012 by L.L. No. 4-2012]**

A. As used in this article, the following shall be adult uses:

ADULT BOOKSTORE — Any establishment which offers for viewing, sale or rental, for any form of consideration or gratuity, adult entertainment, through any mediums, as a substantial or significant portion of its business, merchandise and/or stock-in-trade.

ADULT NOVELTY SHOPS — Any establishment which offers for viewing, sale or rental, for any form of consideration or gratuity, adult entertainment and/or adult paraphernalia as a substantial or significant portion of its business, merchandise and/or stock-in-trade.

ADULT STORE—An establishment having, as a substantial or significant portion of its merchandise and/or stock-in-trade of adult entertainment, DVDs, CDs or computer games and videotapes, paraphernalia or novelties or adult materials of any type, objects or materials used for sexual purposes, or objects which bear a practical resemblance to human sex organs.

ADULT VIDEO STORES — Any establishment which offers for viewing, sale or rental, for any form of consideration, adult entertainment, such as adult photographic reproductions, as a substantial or significant portion of its business, merchandise and/or stock-in-trade.

OTHER ADULT COMMERCIAL FACILITIES — Business or commercial enterprises, other than those specifically set forth by definition in this section, that offer or feature, for any form of consideration or gratuity, adult entertainment, through any medium, as a substantial or significant portion of its business, merchandise and/or stock-in-trade.

B. As used in this article, the following terms shall have the meanings indicated:

ADULT ENTERTAINMENT —Includes the causing, permitting or allowing of:

(1) Offering printed materials, photographic reproductions or live performances which, applying contemporary community standards, and when taken as a whole, appeal to the prurient interest, are patently offensive and lack serious literary, artistic, political or scientific value and which are characterized by an emphasis on persons who appear in a state of nudity; and/or which are characterized by an emphasis on persons who expose specified anatomical areas or engage in depiction or description of specified sexual activities; and/or

(2) Conduct by employees who, as part of their employment, expose to patrons specified anatomical areas; and/or by two or more persons who congregate, associate or consort for purposes of specified sexual activities, exposure of specified anatomical areas or activities when one or more of them is in a state of nudity; and/or

(3) Offering paraphernalia designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse; and/or massage or any other treatment or manipulation of the human body which occurs as a part of, or in connection with, specified sexual activities or where any person providing such massage, treatment or manipulation exposes specified anatomical areas of his or her body.

ADULT PARAPHERNALIA — Includes instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse.

ADULT PHOTOGRAPHIC REPRODUCTIONS — Includes slides, films, motion pictures, videotapes, videocassettes, compact discs or similar pictorial presentations characterized by an emphasis on depiction or description of specified sexual activities or specified anatomical areas.

ADULT PRINTED MATERIALS — Includes books, magazines, periodicals, photographs or other printed matter which are characterized by an emphasis on depiction or description of specified sexual activities or specified anatomical areas.

NUDITY—The appearance, or state of dress, of a person, viewable by one or more other persons, wherein human genitals, pubic region, buttocks, anus, or female breast below a point immediately above the top of the areola are exposed or less than completely and opaquely concealed.

SPECIFIED ANATOMICAL AREAS—Includes, with regard to the human body:

(1) Genitals, pubic region, buttocks, anus, or female breast below a point immediately above the top of the areola less than completely and opaquely concealed; and/or

(2) Male genitals in a discernibly turgid state, even if completely and opaquely concealed.

SPECIFIED SEXUAL ACTIVITIES — Includes, with regard to the human body, actual or simulated depictions or descriptions of:

(1) Genitals in a state of sexual stimulation or arousal; and/or

(2) Acts of masturbation, sexual intercourse or sodomy; and/or

(3) Fondling or other erotic touching of genitals, pubic region, buttocks, anus or female breast.

SUBSTANTIAL OR SIGNIFICANT PORTION —

(1) "Substantial or significant portion" shall be determined using the following considerations:

(a) Amount of floor area and basement space accessible to customers and allotted to adult entertainment of any type, generally, or as compared to the total floor area and basement space accessible to customers; and/or

(b) Amount of adult entertainment stock-in-trade of any type accessible to customers, generally, or as compared to total stock accessible to customers; and/or

(c) Revenues derived from adult entertainment of any type, generally, or as compared to total revenues; and/or

(d) Advertising devoted to adult entertainment of any type, generally, or as compared to total advertising; and/or

(e) Use of the establishment for adult entertainment of any type, generally, or as compared to total use thereof.

(2) However, notwithstanding the above considerations, the following shall be conclusive in determining substantial or significant portion:

(a) Forty percent or more of floor area and basement space accessible to customers allotted to adult entertainment of any type; and/or

(b) Forty percent or more of its stock-in-trade in adult entertainment materials of any type; and/or

(c) Forty percent or more of its gross income derived from adult entertainment of any type; and/or

(d) Forty percent or more of its advertising devoted to adult entertainment of any type; and/or

(e) Forty percent or more of its business, generally, engaged in adult entertainment of any kind.

109.  The amount of stock in trade sold by Plaintiff, or stocked for sale, will be less than the amount required to designate that inventory as substantial under the ordinance as in effect on the date this action was filed, and thus would not have designated Plaintiffs' business as an "adult bookstore", "adult novelty shop", "adult store", "adult video store", or an "other adult commercial facility".

110.  The location of Plaintiffs business is within a commercially zoned area, and the business complies with all zoning, licensing, and business code ordinances.

111.  The action of the Town of Babylon defendants was specifically designed to prohibit the opening of Plaintiffs business.

112.  It is therefore clear that the action of the Town of Babylon and the other defendants was specifically designed to prohibit Plaintiff from conducting its lawful business in the Town, and to specifically prohibit Plaintiff from complying with the law as it was written at the time.

113.  The action by the Town Defendants in barring Plaintiffs from offering and Adult Materials or Paraphernalia was arbitrary, capricious, and a denial or due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. Further, Plaintiffs have been denied due process of law by the unconstitutional application of ordinances, rules and regulations herein, regarding a First Amendment protected form of expression.

114.  As a result, Plaintiff was in fact denied a certificate of occupancy, based on a small number of "adult" items, as determined by town officials, the Town believed would be contained in Plaintiff's inventory.

115.  Plaintiff's rights under the United States Constitution have been violated in that the actions of the Town of Babylon defendants:

  a.  Abridge and restrain Plaintiff's rights to free expression as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

b. Constitute a prior restraint on such expression.

c. Constitute an impermissible "chilling effect" on constitutionally protected speech and expression.

d. Deny equal protection of' the law in that legislation and enforcement is arbitrary, oppressive and capricious and requires Plaintiffs to submit to controls not imposed on other similarly situated businesses.

e. Are arbitrary and capricious as applied to the individual business.

f. Are an unlawful exercise of the State's police power in that there is no substantial relationship to the protection of the public health and welfare or any legitimate +governmental objective and are based on an improper predicate.

g. Are vague and indefinite and fail to set out distinct criteria, thus leaving persons of common intelligence to guess as to the meaning and differ as to its application.

h. Unconstitutionally infringe on Plaintiffs rights to free association.

i. Impermissibly delegate legislative and judicial authority to administrative employees.

j. Constitute an unlawful and unauthorized taking of private property without just compensation, without due process of law, and without a public purpose, in violation of the Fifth Amendment to the United States Constitution.

k. Lack adequate procedural safeguards and fail to provide for prompt judicial review.

l. Manifest an improper purpose in that the ordinances, rules and regulations are not content-neutral and are not unrelated to the suppression of free speech.

m. The restrictions on the First Amendment freedoms are overbroad and far greater than are essential to the furtherance of any alleged governmental interest.

n. Fail to leave open "adequate alternative avenues of communication".

116.    All conditions precedent to the institution and maintenance of this cause of action have occurred or have been performed.

117.    On the injunctive relief sought, Plaintiffs have no adequate remedy at law.

118.     No amount of money damages could adequately compensate Plaintiffs for the irreparable harm described herein.

119.     Plaintiffs intend to exercise their constitutional rights guaranteed under the First Amendment to the United States Constitution.

120.     Neither damages, replevin, attachment, nor any other legal remedy will suffice to safeguard the exercise of those rights.

121.     Plaintiffs, and their agents, employees, patrons, and the public at large will suffer irreparable injury if injunctive relief is not granted, and if Defendant Town of Babylon is permitted to arbitrarily and capriciously enforce rules, regulations and ordinances at issue herein.

122.     The loss of rights guaranteed by the First Amendment is so serious that, as a matter of law, irreparable injury is presumed and, in such an instance involving the loss of First Amendment rights, damages are both inadequate and unascertainable.

123.     The public interest would best be served by the granting of injunctive relief; and the public interest is disserved by permitting the enforcement of invalid rules, regulations and ordinances which interfere with the public's rights under the First Amendment to the United States Constitution.

## HYPOTHETICALS AND COMPARATORS

### Spencer's Gifts.

124.     A Spencer's Gifts store has just been announced in a nearby parcel.

125.     Upon information and belief, the parcel is zoned identically to Plaintiffs'.

126.     Spencer's Gifts sells a large number of sex toys (both as that term is commonly used and as it is defined under the Babylon Town Code).

127.    Upon information and belief, Defendants did not make Spencer's Gifts sign similar affidavits to the one the forced on Plaintiffs.

128.    Upon information and belief, Defendants have not threatened Spencer's Gifts with any proceedings.

129.    Upon information and belief, Defendants did not alter any of Spencer's Gifts' zoning or construction paperwork.

130.    Upon information and belief, Spencer's Gifts sells a more "significant" volume of sex toys than Plaintiffs, by any measure suggested in the Town Code.

***Hypothetical 1:[7]  The Unfortunately Popular Local Grocer***

131.    The Unfortunately Popular Local Grocer (or UnPLG) is a hypothetical store about which the following should be assumed:

> a.  UnPLG sells a significant (greater than 40% of total sales) volume of phallic fruits and vegetables (e.g., carrots, bananas, cucumbers, etc.).
>
> b.  UnPLG does not intend any use of those fruits and vegetables beyond being eaten.
>
> c.  However, UnPLG has gained significant popularity in the adult film community, and know that a majority of their sales at this point are intended by the purchasers to be used — and are in fact used — to stimulate human genitals (in the sense used in § 213-377(B)) in adult films.

---

[7] The first "allegations" in these "hypotheticals" are not necessarily allegations in the traditional sense.  Rather, the first paragraph of each (and all subparagraphs) are factual scenarios that are pled so that the following allegations are ***facts*** that Defendants may admit or deny in the context of the hypothetical.

d. Those purchases constitute a majority of UnPLG's sales of relevant fruits and vegetables.

e. UnPLG does not market its fruits and vegetables to the adult film community in any way.

f. Those purchasing the various fruits and vegetables *in fact* use them primarily for the stimulation of human genital organs.

g. Other food items are also used in various ways by the same purchasers for sadomasochistic purposes — and the owners of UnPLG know this as well.

132. The fruits and vegetables at issue (e.g., bananas, etc.) "bear a practical resemblance to human sex organs" (as that phrase is used in § 213-377).

133. The fruits and vegetables as issue are "ADULT PARAPHERNALIA" under 213-377(A).[8]

134. Defendants would consider the volume of relevant fruits and vegetables sold to be a "substantial or significant portion" or UnPLG's business.

135. UnPLG is therefore an "ADULT NOVELTY SHOP[]" under § 213-377(A).[9]

136. UnPLG is also an "ADULT STORE" under § 213-377(A).[10]

---

[8] "ADULT PARAPHERNALIA — Includes instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, *used* or marketed *primarily for stimulation of human genital organs or sadomasochistic use or abuse*" (emphasis added).
[9] "ADULT NOVELTY SHOPS — Any establishment which offers for viewing, sale or rental, for any form of consideration or gratuity, adult entertainment and/or adult paraphernalia as a substantial or significant portion of its business, merchandise and/or stock-in-trade."
[10] "ADULT STORE—An establishment having, as a substantial or significant portion of its merchandise and/or stock-in-trade of adult entertainment, DVDs, CDs or computer games and videotapes, paraphernalia or novelties or adult materials of any type, objects or materials used for sexual purposes, *or objects which bear a practical resemblance to human sex organs*" (emphasis added).

***Hypothetical 2:  The Tame Gift Shop with Three Butt-Plugs.***

137.    The Tame Gift Shop with Three Butt-Plugs is a hypothetical store about which the

following should be assumed:

  a.    TGSTBP sells ordinary gift shop materials, except that it stocks, at any one time,

  exactly three butt-plugs.

  b.    TGSTBP's name markets those butt-plugs, and they are referenced in all of

  TGSTBP's marketing materials.

  c.    TGSTBP intends, and its (relatively few who purchase them) customers do use

  those butt-plugs for the obvious purpose.

  d.    The three butt-plugs never constitute more than a fraction of one percent of total

  sales or stock.

138.    Defendants would consider the marketing of butt-plugs by TGSTBP to be "significant"

standing on its own.

139.     TGSTBP is nonetheless not an ADULT NOVELTY SHOP or ADULT STORE because

a butt-plug is not a kind of ADULT PARAPHERNALIA (since it is not used form stimulation of

human *genitals*).[11]

***Hypothetical 3:  The Tame Gift Shop with Three Vibrators***

140.    The Tame Gift Shop with Three Vibrators is a hypothetical store about which the

following should be assumed:

---

[11] *Cf. Sewell v Georgia*, 435 US 982, 987, n 3 (1978) ("the facial vagueness of § 26-2101 (c) is
enhanced by its interpretation by law enforcement personnel. Although § 26-2101 (c) by its
terms applies only to devices that are 'designed or marketed as useful primarily for the
stimulation of human genital organs' the accusation against appellant nonetheless charged
appellant with possession of 'anal stimulators.' ***So far as I know, no dictionary includes the
human anus among the genital organs***") (Brennan, J., *dissenting*) (emphasis added).

    a.   TGSTV sells ordinary gift shop materials, except that it stocks, at any one time, exactly three vibrators.

    b.   TGSTV's name markets those vibrators, and they are referenced in all of TGSTV's marketing materials.

    c.   TGSTV intends, and its (relatively few who purchase them) customers do use those vibrators to stimulate human genitals.

    d.   The three vibrators never constitute more than a fraction of one percent of total sales or stock.

141.   Defendants would consider the marketing of vibrators by TGSTV to be "significant" standing on its own.

142.   The vibrators at as issue are "ADULT PARAPHERNALIA" under § 213-377(A).

143.   TGSTV  is an "ADULT NOVELTY SHOP[]" under § 213-377(A).

144.   TGSTV is also an "ADULT STORE" under § 213-377(A).

***Hypothetical 4:  Straight-Only Straps***

145.   Straight-Only Straps is a hypothetical store about which the following should be assumed:

    a.   SOS markets its products to straight, married couples who want to engage in what it is often called "pegging."[12]

---

[12] "Pegging" is a term, coined by sex-advice columnist Dan Savage, to describe when a straight woman uses a "strap-on" sex toy to "top" (that is, penetrate) a straight man during anal sex. *See generally*, Jade Aguilar, *Pegging and the heterosexualization of anal sex: An analysis of Savage Love advice,* 2 Queer Stud. in Media & Pop. Cult. 275 (Sept. 2017).

    b.   Because of that marketing, while there is no categorical ban, others who might

        be interested in similar products (for example, cisgender lesbians) do not

        patronize the store.

    c.   Thus, SOS's products consist entirely of "strap-on" toys used for anal sex.

146.    SOS's products are not ADULT PARAPHERNALIA under § 213-377(A) (*see Sewell*,

435 US at 987 n. 2) because they are never used and are not marketed to be used to stimulate the

genitals.

147.    SOS is not an ADULT NOVELTY SHOP under § 213-377(A).

148.    Notwithstanding that, SOS *is* an ADULT STORE under § 213-377(A) because at least a

large number of its products "bear a practical resemblance to human sex organs."

***Hypothetical 5:  The Two Lube Superstores***.

149.    The Two Lube Superstores (TLS1 and TLS2) are hypothetical stores about which the

following should be assumed:

    a.   TLS1 and TLS2 exclusively sells personal lubricants for sexual purposes.

    b.   TLS1 exclusively sells traditional lubricants.

    c.   TLS2 exclusively sells "warming" or other special, sensation-based lubricants.

    d.   TLS1 and TLS2 both market the lubricants for both genital and anal use, and

        their customers uses them in both ways.

    e.   TLS2's marketing materials emphasize how "stimulating" the warming

        sensations are.

150.    TLS1's lubricants ***are not*** ADULT PARAPHERNALIA under § 213-377(B).

151.    TLS2's lubricants ***are*** ADULT PARAPHERNALIA under § 213-377(B).

152.    Thus, TLS1 is not an ADULT NOVELTY SHOP or ADULT STORE.

153.    And TLS 2 is an ADULT NOVELTY SHOP and an ADULT STORE.

***Hypothetical 6:  The Anti-Dysphoria Supply Shop***

154.    The Anti-Dysphoria Supply Shop is a hypothetical store about which the following

should be assumed:

      a.    ADSS aims to serve the transgender community, and in particular, those who

        experience severe gender dysphoria[13] — as well as those who have received

        medical interventions (such as surgeries) to treat such dysphoria.

      b.    ADSS (much like many pharmacies) rents space in the same building as a local

        medical practice specializing in treating gender dysphoria.

      c.    ADSS's two best-selling products — which together account for more than 40%

        of their stock, sales, floor space, etc. (*see* § 213-377(B)) — are "packers" and

        vaginal dilators.

---

[13] Gender dysphoria is defined as the clinically significant distress caused by "the incongruence between one's experienced or expressed gender and one's assigned gender." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders: Gender Dysphoria 451 (5th ed. 2013).

      Recent research demonstrates that the distress associated with gender dysphoria is caused not by the fact that a person is transgender, but rather because of the hostility directed at them because they are transgender and any inability to socially transition.  *See* Rebecca Robles et al., *Removing transgender identity from the classification of mental disorders: a Mexican field study for ICD-11*, 3 Lancet Psychiatry 850, 857 (2016) (distress is "more strongly predicted by experiences of social rejection and violence than by gender incongruence, consistent with the perspective that these reflect the result of stigmatization and maltreatment rather than integral aspects of transgender identity"); *see also* World Prof'l Ass'n for Transgender Health, *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People* at 4 (7th ed. 2012) (anxiety and depression "are socially induced and are not inherent" to transgender status; Lily Durwood et al., *Mental Health and Self Worth in Socially Transitioned Transgender Youth*, 56(2) J. Am. Acad. Child & Adolescent Psychiatry 116, 120 (2017) (finding normal levels of depression in transgender children who had already socially transitioned as compared to a control group of non-transgender children, in contrast to previous studies' findings of "markedly higher rates of anxiety and depression and lower self-worth" among "gender-nonconforming children who had not socially transitioned").

i. "Packers" are objects used (most often by transgender men) to give the appearance of having a penis — and to fill what might otherwise be a visibly empty place in clothing.  The term also covers "STP" or "stand-to-pee" devices.[14]

ii. Vaginal dilators are a medical device used by both cisgender and transgender women.  Relevantly for ADSS, they are commonly used as part of post-GRS recovery for transgender women who have "bottom" surgery.  While they look something like dildos, they are often quite uncomfortable to use for their intended purpose, at least in the post-surgical context relevant here.

d. ADSS does *not* sell "hard" packers (that is, packers that resemble an erect phallus).

e. Nothing ADSS is intended to be used for sexual purposes — and none of its merchandise *is* used for sexual purposes.

f. Instead, ADSS's stock is entirely devoted to providing medically indicated supplies to customers seeking to treat gender dysphoria.

g. A significant amount of ADSS's sales are covered by its customers' medical insurance.

h. For obvious — and medically significant — reasons, a significant portion of ADSS's stock bears a practical resemblance to human genital organs.

155.    Neither packers nor vaginal dialators are ADULT PARAPHERNALIA under § 213-377(A).

---

[14] For a more thorough discussion, see http://www.ftmguide.org/packing.html.

156.   ADSS is not an ADULT NOVELTY SHOP under § 213-377(A).

157.   Nonetheless, ADSS is an ADULT STORE under § 213-377(A) because a "significant"

portion of its merchandise "bear[s] a practical resemblance to human sex organs."


### FIRST CAUSE OF ACTION
First Amendment – Freedom of Speech
& Fourteenth Amendment – Due Process
U.S. Constitution and Article I, § 9 of the N.Y. Constitution
42 U.S.C. § 1983

158.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

159.   Adult printed and recorded material, such as that proposed to be offered by Plaintiff for

sale, is a form of expression protected by the First Amendment to the Constitution of the United

States.

160.   Ordinances, rule and regulations which restrict activities protected by the First

Amendment, carry the burden of presumed constitutional invalidity.

161.   Plaintiffs clearly have the right to present and provide presumptively protected materials

for its patrons and the public in general; and has a clear legal right to use and operate its business

without interference by Defendant, its agents, servants or employees.

162.   Such lawful use may only be prevented, terminated or modified only after Plaintiff has

been afforded due process of law, which due process was lacking in the actions by which the

Defendant Town of Babylon attempted to prohibit Plaintiff from opening its business.

163.   Because the materials sought to be provided for sale by Plaintiff arc protected by the First

Amendment, any action to restrict that sale must contain adequate procedural safeguards.

164. Town officials may not unilaterally compel the cessation or prevent the initiation of First Amendment activities in the absence of a judicial order to that effect.

165. The actions of Defendant, in imposing unlawful and unconstitutional prior restraints on Plaintiff, deprived Plaintiff and its agents and employees, and the general public of rights guaranteed and protected by the Constitution of the United States.

166. The actions of the Defendant Town of Babylon, in demanding Plaintiffs to sign an affidavit agreeing not to sell any Adult Items (Exhibits 4 & 5), were specifically designed to prohibit the sale of constitutionally protected materials, and are not designed for any lawful purpose, such as the suppression of secondary effects.

167. The actions of the Defendant Town of Babylon, in demanding Plaintiffs provide an inventory of the products they intended to offer for sale (Exhibit 6), were specifically designed to act as a prior restraint of the sale of constitutionally protected materials, and are not designed for any lawful purpose, such as the suppression of secondary effects.

168. In fact, the ordinance has no relation whatsoever to the suppression or prevention of secondary effects, as it is not designed to apply to situations where such effects arc, or may be, likely to be found.

169. The actions of the Defendant Town of Babylon and its Defendant employees are thus an unconstitutional prior restraint of constitutionally protected First Amendment speech.

<div align="center">

**SECOND CAUSE OF ACTION**
**Unconstitutional (Reverse) Spot Zoning and 5th Amendment Taking;**
**42 U.S.C. § 1983 and NY State Constitution**

</div>

170. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

***Reverse Spot Zoning***

171.    As detailed above, Plaintiffs' plot was subjected to different zoning rules than any other plot in the Town of Babylon.

172.    To wit, while every other plot zoned similarly is permitted to have a retail operation that sells certain goods the Town deems to be "adult-use toys," Plaintiffs faced a spot-zoned categorical ban.

173.    "Spot Zoning" has been described as "as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners." *Rodgers v. Tarrytown*, 302 N.Y. 115, 123 (1951).

174.    When done in reverse (e.g., singling out a parcel for to the detriment of that owner, and benefit of other owners), it is no less pernicious — and is varyingly either ***also*** called spot zoning, or called "reverse" spot zoning. *See, e.g., Matter of C/S 12th Ave. LLC v City of NY*, 32 AD3d 1, 9 (1st Dept 2006) ("Reverse spot zoning is a land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment than the neighboring ones") (cleaned up).

175.    Zoning is constitutionally sound because it is planned:  it allows a government to create and plan uses within the borders it governs, to the general benefit.

176.    But "'spot zoning' is the very antithesis of planned zoning." *Id.*

177.    Here, Defendants have reverse spot-zoned Plaintiffs' parcel.

178.    They have imposed a total ban on selling "adult-use toys" and other related items that no other parcel faces.

179.    Throughout the Town, upon information and belief, "adult-use toys" are routinely sold by national drug stores, and other large chains — among others.

180.    Plaintiffs have been damaged by this spot zoning.

***Taking Violation, as Such.***

181.    Reverse spot-zoning is a kind of taking, but Plaintiffs also have a free-standing Takings claim.

182.    The Takings Clause of the Fifth Amendment of the United States Constitution made applicable to the states through the Fourteenth, provides that private property shall not "be taken for public use, without just compensation."

183.    Additionally, the New York State Constitution provides that "[p]rivate property shall not be taken for public use without just compensation." N.Y. Const. Art. I, § 7(a).

184.    Plaintiffs have a constitutionally protected interest in utilizing her leased property, as long as it is in conformance with the law.

185.    Plaintiffs have a constitutionally protected interest in conducting business, as long as it is in conformance with the law.

186.    Defendants' act of withholding the certificate of occupancy to allow Plaintiffs to engage in the legal business activity of selling lingerie, and other items, due to plaintiffs legal business activities outside the geographical jurisdiction of the Town of Babylon and having no nexus to the Town of Babylon have and continue to result in losses that were unanticipated and unsustainable by the Plaintiffs.

187.    Plaintiffs invested over $120,000.00 in this venture and the loss of revenue resulting from the Defendants' illegal taking of Plaintiffs' rights to operate a legal business is illegal, improper and constitutes an unconstitutional regulatory taking without compensation under the Fifth Amendment to the U.S. Constitution

188.    Plaintiffs have, upon information and belief, sustain significant losses of more than $250,000 because of the refusal of the Town to issue a Certificate of Occupancy.

189. The refusal to issue a Certificate of Occupancy was entirely arbitrary.

190. The Town's Code mandates the issuance of the Certificate of Occupancy upon satisfying the preconditions, which Plaintiffs did.

191. Defendant's actions were not supported by any reasonable or legitimate purpose and mandates.

192. The substantial economic impact upon Plaintiffs constituted an unconstitutional taking of Plaintiffs' property for the period between when Plaintiff had complied with all preconditions to receive the Certificate and when Defendants issued the Certificate following litigation and the scheduling of a preliminary injunction hearing.

193. Defendants have offered *no* compensation (to say nothing of *just* compensation) for that Taking.

194. For that Taking, Plaintiffs are entitled to declaratory relief, as well as damages.


### THIRD CAUSE OF ACTION
First Amendment – Freedom of Speech
& Fourteenth Amendment – Due Process
U.S. Constitution and Article I, § 9 of the N.Y. Constitution
42 U.S.C. § 1983

195. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

*Affidavit-related violations.*

196. While purporting to be a measure designed to guarantee equal treatment for various vendors, the actions of the Defendant Town of Babylon have effectively eliminated legally permissible opportunities to sell constitutionally protected material.

197. The ordinances, rules and regulations totally impair the public's access to such materials, and the constitutionally protected expression which they contain.

198.    Thus, the actions of the Defendant Town of Babylon, in demanding Plaintiffs to sign an affidavit agreeing not to sell any Adult Items (Exhibits 4 & 5), fails to allow reasonable alternative means of expression.

***Lack of nexus to any government interest.***

199.    The actions of the Defendant Town of Babylon are specifically designed as censorship and have no independent validity. Thus, the actions of the city are subject to strict scrutiny as violative of the First Amendment to the United States Constitution.

200.    The actions of the Defendant Town of Babylon are similarly invalid under the intermediate scrutiny test articulated in *United States v. O'Brien*, 391 U.S. 367 (1968).

201.    The ordinances and regulations at issue here do not serve a substantial governmental interest. They merely serve as a censorship device unrelated to urban planning and zoning concerns, and unrelated to concerns over the quality of urban life.

202.    The ordinances and regulations at issue in this action are not unrelated to the suppression of free expression, and the effect on free expression is more than incidental.

203.    To pass constitutional muster the ordinance must be content-neutral, the defendants must proffer sufficient evidence of adverse secondary effects, that the ordinance was no broader than necessary to achieve a significant governmental purpose, and that defendants demonstrated an adequate number of available alternative locations.

204.    While there can be no doubt that a municipality has an interest in "the stability and revitalization of the neighborhoods", this interest cannot be considered "compelling" without at least some showing that the form of expression to be regulated has an actual and specific deleterious effect on the community. Here, there was no such showing.

205.    The rules, regulations, ordinances and enforcement thereof by the Defendant Town of Babylon single out businesses which deal with adult materials for special treatment (and more particularly Plaintiffs individually), based on improper predicates, including invalid assumptions of wrongful conduct, decrease in property values, increase in crime, and other alleged secondary effects.

206.    Other land uses have secondary effects substantially greater than those which the city attempts to control here. Yet these other uses are not subject to the requirements that the city imposes on this business.

207.    The ordinances and regulations deny Plaintiff, its employees, and the public at large equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

208.    The Town of Babylon  did not demonstrate any nexus between the adult use zoning ordinance and the negative secondary effects sought to be  curtailed.

209.    Without proof of actual secondary effects directly attributable to appellants' bookstore, there exists nothing but the Town's fear of appellants' bookstore. In principle, Babylon's zoning ordinance is no different than the City of Chattanooga trying to prevent the showing of the musical "Hair" because of its explicit treatment of sex, and the Town's beliefs that such material was inappropriate for the community (see, Southeastern Promotions v Conrad, 420 U.S. 546). However, public distaste and societal fear of the potential effects of certain speech has never provided sufficient justification to suppress protected speech (see, Whitney v California, 274 U.S. 357, 376 [Brandeis, J., concurring] ["Men feared witches and burnt women. It is the function of speech to free men from the bondage of irrational fears. "]; Tinker v Des Moines School Dist., 393 U.S. 503, 508).

210. The ordinances and regulations of Defendant Town of Babylon infringe on First Amendment freedoms in a manner greater than essential to the furtherance of valid City interests and are therefore unconstitutional.

## FOURTH CAUSE OF ACTION
**Fourteenth Amendment – Due Process**
**U.S. Constitution and Article I, § 9 of the N.Y. Constitution**
**42 U.S.C. § 1983**

211. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

212. The ordinances and regulations of Defendant City do not contain adequate procedural safeguards in that they do not allow for a prompt decision by a decision-making authority, a prompt and adequate appellate procedure, and prompt and adequate access to the Courts as previously required by the United States Supreme Court.

213. Defendants caused Plaintiffs harm in subjecting them to a process-free and unconstitutional hearing and revocation threat and process.

## FIFTH CAUSE OF ACTION
**Fourteenth Amendment - Equal Protection - Gender Discrimination**
**U.S. Constitution and Article I, § 9 of the N.Y. Constitution;**
**42 U.S.C. § 1983**

214. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

215. The Town of Babylon defines ADULT PARAPHERNALIA as "[i]nclud[ing] instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse."

216.     Declaring an instrument, device, gear, equipment, apparatus, accoutrement or other appurtenance is designed or used "primarily for stimulation of human genital organs" because it "bears a practical resemblance to a human sex organ" constitutes illegal sex discrimination.

217.     A dildo designed for anal use by gay, cisgender men, for example, is clearly not designed "primarily for stimulation of human genital organs." *See, Sewell*, *supra*.

218.     The same dildo, designed for vaginal use by straight, cisgender women, on the other hand, *is*.

219.     And further as shown in the Anti-Dysphoria Supply Shop hypothetical above, the burden of the statute's overbroad sweep discriminates on the basis of sex and gender identity.

220.     Thus, the ordinance constitutes an unconstitutional violation of the Equal Protection Clause because it applies in a manner which, but for that person's sex, would be different. *See generally, Anonymous v. Omnicom Grp., Inc.*, 852 F.3d 195, 199-200 (2d Cir. 2017).

221.     Put differently, to achieve its ends, the statute "must, along the way, intentionally treat an [individual] worse based in part on that individual's sex." *Bostock v Clayton County*, ___US___ , ___, 140 S Ct 1731, 1742 (2020). The "answer" to whether the statute has been violated "depends entirely on whether [its subject] is a man or a woman." *Id.*

**SIXTH CAUSE OF ACTION**
**First Amendment - Commercial Speech – Freedom of Association**
**U.S. Constitution and Article I, § 9 of the N.Y. Constitution;**
**42 U.S.C. § 1983**

222.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

223.    The *Central Hudson* test asks the following: (1) is the expression protected by the First Amendment; (2) is the asserted governmental interest substantial; (3) does the regulation directly advance the governmental interest asserted; and (4) is the regulation more extensive than necessary to serve that interest.  the excessive restrictions cannot survive*." Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980).

224.    The burden is on the government to satisfy the test. See *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983) ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it.").

225.    In order to satisfy constitutional requirements, as set out in *Central Hudson*, the restriction must satisfy two further criteria. "First, the restriction must directly advance the state interest involved"; and second, it must not be "more extensive than is necessary to serve that interest." *Cent. Hudson*, 447 U.S. at 564, 566. Defendants bear "the burden of establishing a reasonable fit between the [regulatory scheme's] ends and the means chosen to accomplish those ends." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 414 (1993) (cleaned up).

226.    Vergara advertises merchandise on her website for sale over the internet, which is neither displayed at the store or sold at the store nor is she otherwise operating within the geographical jurisdiction of the Town of Babylon or the County of Suffolk.

227.    The Town's attempt to revoke her building permit or otherwise punish her and prevent her from operating a retail lingerie store within the Town of Babylon as a result of her commercial speech totally outside the geographical jurisdiction of the Town of Babylon constitutes a First Amendment violation of her right to Free Speech (requiring an analysis under Strict Scrutiny).

228.    As the allegations in the Revocation Hearing Notice are merely a pretext to her being a female business owner catering to a suspect classification clientele (TGNCNB).  (*see* note 5, above).

229.    The Town of Babylon, by so doing, is committing a First Amendment violation of Plaintiffs' right to Freedom of Association, which in turn triggers strict scrutiny.

230.    Plaintiffs are entitled to a judgment declaring the Town's actions are unconstitutional under the 1st Amendment to the United States Constitution and the equivalent provisions of the New York State Constitution.

231.    In the absence of declaratory and injunctive relief, Plaintiffs, and others in her position, will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to them by the United States Constitution and the New York State Constitution.

232.    Plaintiffs are entitled compensatory and consequential damages in an amount to be determined by a jury after trial, plus attorney fees, costs, disbursements, and other incidental and consequential damages, plus interest.


**SEVENTH CAUSE OF ACTION**
**First Amendment - Freedom of Association**
**U.S. Constitution and Article I, § 9 of the N.Y. Constitution;**
**42 U.S.C. § 1983**

233.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

234.    The First Amendment protects the ability "to engage in association for the advancement of beliefs and ideas." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958).

235.    A necessary element for application of the First Amendment's protection for freedom of association is membership with a group. *Id.* at 430

236.	Vergara advertises merchandise on her website for sale over the internet, which merchandise is neither displayed at the store or sold at the store nor is her internet "e-store" otherwise operating within the geographical jurisdiction of the Town of Babylon or the County of Suffolk).

237.	Thus, the advertising and sales that the Town seeks to impose sanctions against the Plaintiffs for, are sold on the internet, which the Town of Babylon lacks jurisdiction to regulate.

238.	Outside of the Town she chooses to associate both with the TGNCNB community and people who want to buy sex toys, the Town is thus persecuting her and prosecuting her for association with those people for acts occurring outside of their jurisdictional limits.

239.	Plaintiffs have a right under the First Amendment to associate with whomever they desire and to engage in business with such people outside of the Town without the Town's interference.

240.	The purpose of the zoning legislation at issue is, in theory, is to ameliorate the secondary effects of adult stores, like preserving property values, protecting minors and young people.

241.	It is thus appropriate because it is narrowly targeted to conduct that (in theory) might emerge from certain behavior taking place within the borders of the Town.

242.	But zoning cannot Constitutionally bar First Amendment associations unrelated to land use.

243.	Plaintiffs — without using land in or setting foot in Babylon — have an electronic business that does sell some adult paraphernalia.

244.	Defendants may not use that First Amendment association to deny Plaintiffs what they are entitled to under the zoning code — particularly when the zoning code provides no notice that conduct *outside* of Babylon is somehow prohibited.

245.	Upon information and belief, there exist many owners of multiple parcels in Babylon.

246. And upon information and belief, Defendants do not attribute what those owners do on one of those parcels to their other parcels.

247. That is, imagine (hypothetically) an owner of a single-family home in a single-family zone, who also owns a small grocery store.

248. Upon information and belief, in respect to that owner, the Defendants would not attempt to prosecute zoning "violations" at the single-family home just because the same owner ***also*** engages in sales that would be prohibited at the home on a ***different*** parcel.

249. But that is exactly what Defendants are doing to Plaintiffs — in violation of their First Amendment free association (and other) rights.

250. Beyond that, Defendants are retaliating against Plaintiffs for — in the words of their Town Attorney — "us[ing] every means possible to fight us" in the past.

251. But "using every possible means" to fight the Town has another name in the First Amendment context: petitioning the government for redress.

252. Thus, by taking actions because they believe Plaintiff "should get down on her knees and thank us" but because "instead she is trying to open another store" they "will not allow it," Defendants are engaging in pure First Amendment retaliation.

253. Plaintiffs are entitled to a judgment declaring the Town's refusal to issue the Certificate of Occupancy as unconstitutional under the 1st Amendment to the United States Constitution and Article I, Section 6 of the New York State Constitution.

254. In the absence of declaratory and injunctive relief, Plaintiffs, and others in her position, will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to them by the United States Constitution and the New York State Constitution.

255.     Plaintiffs are entitled compensatory and consequential damages in an amount to be determined by a jury after trial, plus attorney fees, costs, disbursements, and other incidental and consequential damages, plus interest.

## EIGHTH CAUSE OF ACTION
**First Amendment - Retaliation & Petition Clause**
**U.S. Constitution and Article I, § 9 of the N.Y. Constitution;**
**42 U.S.C. § 1983**

256.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein

257.     The statements by Assistant Town attorney, Jerry Garguilo, made on multiple occasions while discussing Plaintiffs' prior store and her current attempt to open a new business within the Town of Babylon with Plaintiffs' attorney Richard Rosenthal, in sum and substance, that Plaintiff "operated for 12 years without a Certificate of Occupancy, and used every means possible to fight us, and she should get down on her knees and thank us, instead she is trying to open another store, and we will not allow it."

258.     The same Town Attorney told Richard Rosenthal that if Plaintiff ever does get the Certificate of Occupancy, she will be "under a microscope."

259.     That statement was intended to convey, and did convey, that Plaintiff would face scrutiny a similarly situated person seeking to run an identical business would not.

260.     It was intended to convey, and did convey, that the reason for that scrutiny was Plaintiff's prior act of "us[ing] every possible means to fight [the Town].

261.     Defendants are retaliating against Plaintiffs for — in the words of their Town Attorney — "us[ing] every means possible to fight us" in the past.

262.     But "using every possible means" to fight the Town has another name in the First Amendment context:  petitioning the government for redress.

263.     Thus, by taking actions because they believe Plaintiff "should get down on her knees and thank us" but because "instead she is trying to open another store" they "will not allow it," Defendants are engaging in pure First Amendment retaliation for exercising her rights under the petition clause of the First Amendment.


<div align="center">

**NINTH CAUSE OF ACTION**
**Fourteenth Amendment - Equal Protection - Class of One**
**U.S. Constitution and Article I, § 9 of the N.Y. Constitution;**
**42 U.S.C. § 1983**

</div>

264.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

265.     Ordinarily, "[t]o state a claim for an equal protection violation, [plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender." *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).

266.     However, "an individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim under the 'class of one' theory recognized by the Supreme Court in *Willowbrook v. Olech*," *Young*, 2010 U.S. Dist. LEXIS 35368, 2010 WL 1424008, at *16 (*citing Willowbrook,* 528 U.S. 562 [2000])

267.     "Under a 'class of one' equal protection claim, a plaintiff must allege that (1) '[she] has been intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'" *Id*. (quoting *Willowbrook*, 528 U.S. at 564). "In order to state an equal protection violation under § 1983, 'it is axiomatic that plaintiff must allege that similarly situated persons were treated differently.'" *Id*. (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 [2d Cir. 1994]).

268.    Requiring Vergara to sign an affidavit swearing not to sell any "Adult" merchandise as a condition of allowing her to obtain a permit (where Town of Babylon Code 213 does not have such a ban) creates a class of one and possibly a member of a suspect class as a female business owner catering to the TGNCNB community.

269.    That class of one could be defined in two, independently sufficient ways:

    a.  People who may not sell *any* "adult" merchandise in Babylon; or

    b.  People who must surrender their rights to sell non-substantial quantities of "adult" merchandise in order to operate in the town of Babylon.

270.    "To prove a 'class of one' claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him." Leib v. Hillsborough Cty. Public Transp. Com'n, 558 F.3d 1301, 1307 (11th Cir. 2009)

271.    To be similarly situated, "the comparators must be prima facie identical in all relevant respects." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1264 (11th Cir. 2010) (internal quotation marks omitted); Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 599 F. Supp. 2d 1332, 1343 (N.D. Ga. 2009) ("a class of one plaintiff must demonstrate an extremely high level of similarity between the plaintiff and the allegedly similarly situated comparator").

272.    "Under Olech, a 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: (1) negate every conceivable basis which might support the government action; or [*28] (2) demonstrate that the challenged government action was motivated by animus or ill-will." Dibbs v. Hillsborough Cty., Fla., 67 F. Supp. 3d 1340, 1349 (M.D. Fla. 2014) (internal alteration and quotations omitted).

273.    A Spencer's Gifts store has just opened in the Tanger Mall directly across the street from Plaintiffs' store.

274.    Upon information and belief, the parcel is zoned identically to Plaintiffs'.

275.    Spencer's Gifts sells a large number of sex toys (both as that term is commonly used and as it is defined under the Babylon Town Code).

276.    Upon information and belief, Spencer's Gifts sells a more "significant" volume of sex toys than Plaintiffs, by any measure suggested in the Town Code

277.    Upon information and belief, Defendants did not make Spencer's Gifts sign similar affidavits to the one they forced on Plaintiffs.

278.    Upon information and belief, Defendants did not make Spencer's Gifts to provide lists of inventory they intended to sell as they required from Plaintiffs.

279.    Upon information and belief, Defendants have not threatened Spencer's Gifts with any proceedings.

280.    Upon information and belief, Defendants did not alter any of Spencer's Gifts' zoning or construction paperwork.

281.    Upon information and belief, Defendants did not intentionally refuse or otherwise delay the issuance of Spencer's Gifts' building permits or certificate of occupancy or otherwise delay their opening for business.

282.    Plaintiffs are entitled to a judgment declaring the Town's requirement that she submit an affidavit and forego her due process rights therein, in order to obtain the Building Permit and Certificate of Occupancy, is unconstitutional under the 14th Amendment to the United States Constitution and Article I, Section 6 of the New York State Constitution.

283. In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to them by the United States Constitution and the New York State Constitution.

284. Plaintiffs are entitled compensatory and consequential damages in an amount to be determined by a jury after trial, plus attorney fees, costs, disbursements, and other incidental and consequential damages, plus interest.

## TENTH CAUSE OF ACTION
### Fourteenth Amendment - Void for Vagueness and Overbroad (as applied and on its face)
### U.S. Constitution and Article I, § 6 of the N.Y. Constitution;
### 42 U.S.C. § 1983
### Town Code Chapter 123

285. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

286. The Due Process clause of the Fourteenth Amendment to the United States Constitution provides in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." The New York Constitution (Art. I, § 6) similarly directs: "No person shall be deprived of life, liberty or property without due process of law."

287. A law is unconstitutionally vague under procedural due process principles if it "authorizes or encourages arbitrary and discriminatory enforcement," by failing to provide any "standard that can be objectively applied" to determine compliance. *Cunney v. Bd. of Trustees of Vill. of Grand View*, 660 F.3d 612, 621-22 (2d Cir. 2011), or if it does not adequately inform people of "what is required of them," *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

288. Plaintiffs have a legitimate property interest grounded in state law, in the property they lease, and pursuant to the Town of Babylon's building ordinances.

289.    Plaintiffs have a legitimate interest, grounded in state law, in the property they lease, and in the right to use this property according to law.

290.    Plaintiffs also have legitimate property interests in the Building Permit the Town issue to her, and in the Certificate of Occupancy the Town is required to issue to her under the Town Code mandates.

291.    Defendant has deprived Plaintiffs of these interests.

292.    That flies in the face of due process principles, which require "that regulated parties . . . know what is required of them so they may act accordingly." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

293.    Acting under color of state law, Defendant has caused, and will continue to cause, Plaintiffs to be deprived of their property without due process, both facially and as applied to them, in violation of their due process rights under the Fourteenth Amendment.

294.    The Zoning Ordinance (Town of Babylon Code 213) is unconstitutionally vague and overbroad on its face in a number of ways, including but not limited to:

   a.    While "substantial space" zoning ordinances have been upheld, they must provide fair notice of what they restrict — for example, by explicitly setting out a limit to the amount of floor space attributable to "Adult" material vs. the total amount of floor space.  The approach of allowing any combination of four factors, without any minimum standards, amounts to a grant of unlimited discretion that offends due process and equal protection:  the ordinance bars potentially any combination of space, value, storage, or other criteria, without any clear rules or regulations.

   b.    The Court should note that Chapter 213 does not in any way prohibit the sale of anything, and only restricts the location of stores for which, under the definitions

contained in Chapter 213, Section 213-377 -- adult entertainment or adult

paraphernalia are a substantial or significant portion of their business merchandise

and/or stock in trade.

    c.   The ordinance provides virtually no notice of ***what*** constitutes an "adult" product,

leaving unlimited discretion (as explained elsewhere herein) in the hands of

Defendants to determine what the law bars.

295.    The spot-zoned version of the Zoning Ordinance, which is not based on "substantial space,"
but is instead a categorical ban, is unconstitutional as applied.

296.    While the Plaintiffs acknowledge that similar zoning plans have been upheld, when
properly crafted and enforced, the instant plan as applied to her, is both facially unconstitutionally
vague and overbroad and unconstitutional as applied to prevent sale of any Adult merchandise,
because without any written warning, it bars any sales of an undisclosed universe of products.

297.    Chapter 213 of the Town's Code is vague and arbitrary.

298.    The Chapter does not specify the reference period in any way.

299.    Upon information and belief, the Town uses unbridled discretion to look at the relevant
period.

300.    Given that, by way of example, If CVS[15] has a particularly slow weekend, and sells very
few products generally, but sells multiple expensive dildos or other sex toys[16], that single weekend
might convert that location into an "adult use" because those small numbers of high-price sales

---

[15] CVS — a national pharmacy chain with three locations in Babylon, NY — stocks dildos and
other sex toys in incidental (relative to their size) numbers.  *See*
https://www.cvs.com/shop/content/dildos
[16] *See, for example,* https://www.cvs.com/shop/picobong-transformer-double-ended-vibe-prodid-1012746 ($142.99 for a "Double Ended Vibe").

are a "substantial or significant portion of its business" and brings the entire store out of compliance. *See also,* the UnPLG example above.

301. The Ordinance is also overbroad in how it defines what constitutes adult paraphernalia.

302. The Code offers this definition: "instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse."

303. This definition is both over- and under-inclusive.

304. For example, the law is under inclusive in that any instrument designed for ***anal*** stimulation sits entirely outside the definition, because the word "genital organs" does not encompass the anus.[17]

305. Similarly, while so-called "butt-plugs" are ***obviously*** sex toys or "adult paraphernalia" in any common-sense definition, they are not covered by the Code.

306. On the overinclusion side, because the code uses a disjunctive "or" in "used ***or*** marketed primarily…," the intent of random individuals can totally change the nature of a "use" — and thereby the nature of a "substantial" portion of a store's sales. *See, for example*, UnPLG Hypothetical.

307. If a pornography producer goes to a grocery store and buys a substantial quantity of phallic vegetables, intending to "use" them for "stimulation of human genital organs" in a film,[18] that single large purchase might make a mom-and-pop grocery store's sales into an adult use.

---

[17] In that way, it is not clear entirely whether "strap ons" as identified by Defendants in the Amended Notice (Ex. 10) would even meet the Code's definition — at least if they were "marketed primarily" for straight couples engaged in what is called "pegging" (a straight woman using a strap-on sex toy to "top" a straight man during anal sex) and then "used" in that way. *See generally*, Aguilar, 2 Queer Stud. in Media & Pop. Cult. 275, *cited above*.

[18] Plaintiffs assure the Court such films exist — but will spare all involved the citation.

308. These examples are purely illustrative and are not intended to be exhaustive.

309. But they show that the law is irrationally overbroad, and therefore unconstitutional.

310. Plaintiffs are entitled to a judgment declaring the Town's Code Chapter 213 is unconstitutional under the 14th Amendment to the United States Constitution and Article I, Section 6 of the New York State Constitution.

311. In the absence of declaratory and injunctive relief, Plaintiffs, and others in her position, will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to them by the United States Constitution and the New York State Constitution.

312. Plaintiffs are entitled compensatory and consequential damages in an amount to be determined by a jury after trial, plus attorney fees, costs, disbursements, and other incidental and consequential damages, plus interest.

313. In the absence of declaratory and injunctive relief, Plaintiffs, and others in her position, will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to them by the United States Constitution and the New York State Constitution.

## ELEVENTH CAUSE OF ACTION
**Fourteenth Amendment - Substantive Due Process**
**U.S. Constitution and Article I, § 6 of the N.Y. Constitution; 42 U.S.C. § 1983**

314. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

315. "To state a claim for substantive due process, a plaintiff must allege that: (1) he had a valid property interest and (2) the 'defendants infringed on that property right in an arbitrary or irrational manner.'" *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 422 (EDNY, 2021) (citing *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007).

316.     Acting under color of state law, Defendant has caused, and will continue to cause, Plaintiffs to be deprived of her property, in violation of her substantive due process rights under the Fourteenth Amendment.

317.     Plaintiffs have a legitimate property interest grounded in state law, in the property they lease, and pursuant to the Town of Babylon's building ordinances.

318.     Plaintiffs have a legitimate interest, grounded in state law, in the property they lease, and in the right to use this property according to law.

319.     Plaintiffs also have a legitimate property interests in the Building Permit the Town issued to her, and in the Certificate of Occupancy the Town is required to issue to her under the Town Code mandates.

320.     Defendant has deprived Plaintiffs of these interests.

321.     The facts show that the Town of Babylon's conduct is so outrageously arbitrary as to constitute a gross abuse of authority,

> a.  The doctoring of Plaintiffs' original Building Permit Application to state an unapproved use;
>
> b.  The doctoring of Plaintiffs' Building Permit Application to change the purpose of the use of the property;
>
> c.  The refusal to issue the Certificate of Occupancy despite a clear statutory mandate to do so;
>
> d.  Giving Notice of a Hearing to revoke the Building Permit that offends the due process in multiple ways as describe above;
>
> e.  Refusal to provide hearing procedures, despite being asked multiple times;

      f.   The attempt to punish the plaintiffs for legal constitutionally protected conduct occurring outside the geographical jurisdiction of the Town of Babylon and having no nexus to the Town of Babylon.

322.   Defendants' decisions to deprive Plaintiffs of their rights and property interests arise because of an illegal and unconstitutional motive.

323.   Defendants' decisions are irrational and sufficiently outrageous as to give rise to a substantive due process claim.

324.   Defendants' actions against Plaintiffs were tainted by animus towards TGNCNB people, and hence the actions were irrational.

325.   Defendants' actions suggest an improper motive and they rise to the level of shocking, abusive, arbitrary, and capricious behavior such that Defendants have violated Plaintiffs' constitutional rights.

326.   Plaintiffs are entitled to a judgment declaring the Town's actions to be violative of their substantive due process rights under the 14th Amendment to the United States Constitution and Article I, Section 6 of the New York State Constitution.

327.   In the absence of declaratory and injunctive relief, Plaintiffs, and others in their position, will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to them by the United States Constitution and the New York State Constitution.

328.   Plaintiffs are entitled compensatory and consequential damages in an amount to be determined by a jury after trial, plus attorney fees, costs, disbursements, and other incidental and consequential damages, plus interest.

## TWELFTH CAUSE OF ACTION
### Commerce Clause of the U.S. Constitution;
### 42 U.S.C. § 1983

329.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

330.    The Plaintiffs' "e-store" advertises, sells and ships its products throughout the United States to customers throughout the United States and is actively engaged in interstate commerce

331.    To show standing for their dormant Commerce Clause claim, Plaintiffs must demonstrate that their alleged injuries are traceable to (i.e., "the result of," City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983), or "a consequence of," Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 485, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)) discrimination against interstate commerce.

332.    Facially neutral regulations that unduly burden interstate commerce clause may violate the dormant commerce or have the "practical effect of 'extraterritorial control of commerce occurring entirely outside the boundaries of the state in question. *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (quoting *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004)).

333.    "The negative or dormant implication of the Commerce Clause[,] which prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *AAA Northeast*, 221 F. Supp. 3d at 382 (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009)).

334.    Defendants' actions interfere with interstate commerce by barring Plaintiffs from operating a store within the Town's jurisdiction because they do not approve of items they are selling outside their geographical jurisdiction.

335. The Town has ***no*** jurisdiction to regulate Plaintiffs' legal business activities outside the geographical jurisdiction of the Town of Babylon and having no nexus to the Town of Babylon.

336. Plaintiffs have been damaged by the deprivation of their constitutional right to contract.

337. Plaintiffs are entitled to declaratory and injunctive relief to that effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants as follows:

A. A declaration that the Babylon Town Code §89-26 is facially unconstitutional in its entirety;

    a. In the alternative, declaration that the Babylon Town Code §89-26 is unconstitutional as it was applied to Plaintiffs;

B. A declaration that the Babylon Town Code Chapter 213 is facially unconstitutional in its entirety;

    a. In the alternative, a declaration that each of the challenged portions and provisions of the Babylon Town Code Chapter 213 are facially unconstitutional;

    b. In the alternative, a declaration that the Babylon Town Code Chapter 213 is unconstitutional in its entirety as applied to Plaintiffs, or that each of the challenged portions and provisions of the Babylon Town Code Chapter 213 are unconstitutional as applied to Plaintiffs;

C. A permanent injunction enjoining Defendants from implementing or enforcing Babylon Town Code Chapter 213, or, in the alternative, of implementing or enforcing each of its challenged portions and provisions, both facially and as applied to Plaintiffs;

D. An award of compensatory and punitive damages (punitive damages only against the individual Defendants) to the Plaintiffs in a sum to be determined by a Jury after trial.

E. An award of fees, costs, expenses, and disbursements, including attorneys' fees and costs to which Plaintiffs are entitled pursuant to 42 U.S.C. § 1988; and

F. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury in this action of all issues so triable.

Dated: Huntington Station, New York
      February 22, 2022

<div style="margin-left:40%">

Respectfully Submitted,

   /s/
_____
RICHARD BRUCE ROSENTHAL
545 E. Jericho Turnpike
Huntington Station, NY 11746
(631) 629-8111 (telephone)
(631) 961-8789 (facsimile)
richard@thedoglawyer.com

J. REMY GREEN
Cohen &Green P.L.L.C.
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

Michela Huth
PO Box 17
Bolivar, OH 44612
330-440-4027 (telephone)
michelahuth.esq@gmail.com

Juanita Bright
545 E. Jericho Turnpike
Huntington Station, NY 11746
(646) 235-2764 (telephone)

</div>

Jbright.esq@gmail.com