**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
NICOLE VERGARA et al.,

Plaintiffs,

-against-

TOWN OF BABYLON, NY et al.,

Defendants.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**

**21-CV-6667 (ST)**

**TISCIONE, United States Magistrate Judge:**

On December 1, 2021, Plaintiffs Nicole Vergara and Bella 77 Corp. (collectively "Plaintiffs") filed a complaint against Defendant Town of Babylon ("Babylon"), alleging freedom of speech, equal protection, and due process violations. Plaintiff also named several town employees as defendants, including Timothy Besemer (Chief Building Inspector), Rachel Scelfo (Commissioner, Planning & Development, Building Division), Joseph Wilson (Town Attorney), and John and Jane Does. Before this Court is Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion"). For the reasons discussed below, this Court GRANTS the Motion and DISMISSES the Amended Complaint.

## BACKGROUND

Plaintiff Nicole Vergara ("Vergara") owns Plaintiff Bella 77 Corp. d/b/a Cupid's Boutique ("Cupid's"), a store located at 786 Grand Boulevard, Deer Park, New York. Am. Compl. ¶¶ 16-17, ECF No. 19. For twelve years, Vergara ran an adult business at 832 Grand Boulevard in the Town of Babylon that catered to transgender, gender-nonconforming, and non-binary residents. *Id.* ¶ 29; Mem. Supp. Mot. at 3, ECF No. 76-14. Babylon shut down the business in early 2021 for violating Town Code § 213-377, *et seq.* ("Section 213"). Am. Compl. ¶ 31; Mem. Supp. Mot. at 3.

Section 213 defines several types of adult businesses, including:

> **ADULT BOOKSTORE**
> Any establishment which offers for viewing, sale or rental, for any form of consideration or gratuity, adult entertainment, through any mediums, as a substantial or significant portion of its business, merchandise and/or stock-in-trade.
>
> **ADULT NOVELTY SHOPS**
> Any establishment which offers for viewing, sale or rental, for any form of consideration or gratuity, adult entertainment and/or adult paraphernalia as a substantial or significant portion of its business, merchandise and/or stock-in-trade.
>
> **ADULT STORE**
> An establishment having, as a substantial or significant portion of its merchandise and/or stock-in-trade of adult entertainment, DVDs, CDs or computer games and videotapes, paraphernalia or novelties or adult materials of any type, objects or materials used for sexual purposes, or objects which bear a practical resemblance to human sex organs.
>
> **ADULT VIDEO STORES**
> Any establishment which offers for viewing, sale or rental, for any form of consideration, adult entertainment, such as adult photographic reproductions, as a substantial or significant portion of its business, merchandise and/or stock-in-trade.
>
> **OTHER ADULT COMMERCIAL FACILITIES**
> Business or commercial enterprises, other than those specifically set forth by definition in this section, that offer or feature, for any form of consideration or gratuity, adult entertainment, through any medium, as a substantial or significant portion of its business, merchandise and/or stock-in-trade.

Town of Babylon, N.Y., Town Code § 213-377. The ordinance then defines several of the terms in the above definitions, including:

> **ADULT ENTERTAINMENT**
> Includes the causing, permitting or allowing of:
> . . .
> (3) Offering paraphernalia designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse; and/or massage or any other treatment or manipulation of the human body which occurs as a part of, or in connection with, specified sexual activities or where any person providing such massage, treatment or manipulation exposes specified anatomical areas of his or her body.
>
> **ADULT PARAPHERNALIA**
> Includes instruments, devices, gear, equipment, apparatus, accoutrements or other appurtenances which are designed, used or marketed primarily for stimulation of human genital organs or sadomasochistic use or abuse.

**SPECIFIED ANATOMICAL AREAS**
Includes, with regard to the human body:
(1) Genitals, pubic region, buttocks, anus, or female breast below a point immediately above the top of the areola less than completely and opaquely concealed; and/or
(2) Male genitals in a discernibly turgid state, even if completely and opaquely concealed.

**SPECIFIED SEXUAL ACTIVITIES**
Includes, with regard to the human body, actual or simulated depictions or descriptions of:
(1) Genitals in a state of sexual stimulation or arousal; and/or
(2) Acts of masturbation, sexual intercourse or sodomy; and/or
(3) Fondling or other erotic touching of genitals, pubic region, buttocks, anus or female breast.

*Id.* The code also defines a "substantial or significant portion" as:

**SUBSTANTIAL OR SIGNIFICANT PORTION**
(1) "Substantial or significant portion" shall be determined using the following considerations:
(a) Amount of floor area and basement space accessible to customers and allotted to adult entertainment of any type, generally, or as compared to the total floor area and basement space accessible to customers; and/or
(b) Amount of adult entertainment stock-in-trade of any type accessible to customers, generally, or as compared to total stock accessible to customers; and/or
(c) Revenues derived from adult entertainment of any type, generally, or as compared to total revenues; and/or
(d) Advertising devoted to adult entertainment of any type, generally, or as compared to total advertising; and/or
(e) Use of the establishment for adult entertainment of any type, generally, or as compared to total use thereof.
(2) However, notwithstanding the above considerations, the following shall be conclusive in determining substantial or significant portion:
(a) Forty percent or more of floor area and basement space accessible to customers allotted to adult entertainment of any type; and/or
(b) Forty percent or more of its stock-in-trade in adult entertainment materials of any type; and/or
(c) Forty percent or more of its gross income derived from adult entertainment of any type; and/or
(d) Forty percent or more of its advertising devoted to adult entertainment of any type; and/or
(e) Forty percent or more of its business, generally, engaged in adult entertainment of any kind.

*Id.* Any use within these defined categories is not permitted "within a one-thousand-foot radius of the lot line of any lot zoned for residential use," "within a five-hundred-foot radius of the lot line of another such legal adult use," or "within a one-thousand-foot radius of any school, library, church or other place of religious worship, park, playground or playing field." *Id.* § 213-378.

After her store closed, Vergara moved locations to 786 Grand Boulevard and filed a building permit on April 5, 2021, to obtain a Certificate of Occupancy. Am. Compl. ¶ 38. Vergara listed the intended use as "retail lingerie store," and Plaintiffs' agent described the purpose of work as "proposed interior alterations; change of use; change of tenant." *Id.* ¶¶ 38-39. Plaintiffs allege that an unknown town employee then replaced the purpose of work description with "Erect 2900 ft interior alteration for 'Cupid Boutique.'" *Id.* ¶ 40.

In a separate letter to Babylon on June 8, 2021, Cupid's went beyond the requirements present in the Town Code and confirmed that it "will strictly be for retail use as a lingerie/clothing store" and that "[n]o products deemed to be adult-use toys, or any items prohibited by Town code shall be sold or stored." *Id.* ¶ 41. Vergara continued to sell adult products but moved the practice online via a mail-order model based outside of Babylon. *Id.* ¶¶ 103-04. On June 10, 2021, Babylon denied Cupid's Building Permit Application on the premise that 786 Grand Boulevard was not zoned for "adult use" under Section 213. *Id.* ¶ 45.

Vergara then submitted a new application, listing her use as "retail lingerie store." *Id.* ¶ 48. Defendant Rachel Scelfo ("Scelfo") responded with a letter, asking Cupid's attorneys to include "an Affidavit from [Vergara] stating that the premises will not be used as an 'adult use,' as defined in the Town of Babylon Town Code and that she does not intend to sell adult toys or novelties on the premises." ECF No. 19-4. Scelfo also requested an inventory list and added a provision that Vergara would "forego her [Certificate of Occupancy] should the Chief Building Inspector, upon

inspection, determine that she is conducting an 'adult use' - as such use is defined in the Town of Babylon Town Code." *Id.* Scelfo explained that the additional measures were required because Vergara "operated an adult use within the Town in a nearby location" that represented itself as a lingerie retail store. *Id.* Vergara submitted a revised plan and mailed the affidavit and inventory list to Babylon on August 3, 2021. Am. Compl. ¶ 54. Vergara's affidavit stated:

> I, Nicole Vergara, being duly sworn, depose and say that the intention for the above-referenced premises will be used for retail sales and am seeking review and approval of a building permit for retail use.
>
> As per Town of Babylon Town Code, I do not intend to sell items related to "adult use". I am willing to forego my Certificate of Occupancy should I be found to be in violation of the Town Code relating to "adult use" products.

ECF No. 19-5.

On August 5, 2021, Vergara filed another application, which the Commissioner of the Planning and Development of the Town of Babylon approved on September 2, 2021. *Id.* ¶¶ 56-57. Vergara started renovations shortly thereafter. *Id.* ¶ 57. On September 20, 2021, Timothy Besemer, the Chief Building Inspector ("Besemer"), inspected the completed renovations and stated on the report, "Final OK Obtain Fire Underwriters Cert." *Id.* ¶¶ 58-59. Vergara received approval from the New York Board of Fire Underwriters and filed a Town of Babylon Plumbing Permit, a Final Survey, and a Fire Underwriters Certificate with Babylon, satisfying the remaining prerequisites to receive a Certificate of Occupancy. *Id.* ¶¶ 60-63.

Plaintiffs allege that Babylon then delayed issuing the certificate, despite satisfying all prerequisites. *Id.* ¶ 67. The Town Code states that "[a] certificate of occupancy . . . shall be issued **within 10 days** after the erection or alteration of the building shall have been completed." Town of Babylon, NY, Town Code § 213-20 (emphasis added). Plaintiffs were unable to occupy the building without a valid certificate. Am. Compl. ¶ 65. Despite multiple requests by Plaintiffs after

the ten-day window elapsed, Babylon did not issue the certificate until December 2, 2021. *Id.* ¶ 67.

Instead, on October 8, 2021, Besemer mailed a letter to Vergara warning her that her building permit may be revoked and informing her that she must attend a hearing scheduled for October 19, 2021, to determine if she sold any adult merchandise or made material misrepresentations in her application. *Id.* ¶ 70. The Building Inspector's authority to revoke a permit is described in the following provision of the town code:

> A. The Building Inspector may revoke a permit or approval issued under the provisions of this chapter in the following instances:
>
> > (1) Where he or she finds that there has been any false statement or misrepresentation as to a material fact in the application, plans or specifications on which the building permit was based; or
> > (2) Where he or she finds that the building permit was issued in error and should not have been issued in accordance with the applicable law; or
> > (3) Where he or she finds that the work performed under the permit is not being prosecuted in accordance with the provisions of the application, plans or specifications; or
> > (4) Where the person to whom a building permit has been issued fails or refuses to comply with a stop-work order issued by the Building Inspector.
>
> B. Such revocation shall take place after notice to the applicant and an opportunity for the applicant to be heard by the Building Inspector.

Town Code § 89-26. The code also prevents applicants from changing their use after receiving a Certificate of Occupancy, under the following provisions:

> § 89-29 Change of occupancy and use.
> No change of occupancy or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy for such building unless a permit is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this chapter shall be made unless the Building Inspector, upon inspection, finds that such building conforms substantially to the provisions of this chapter with respect to the proposed new occupancy and use and issues a certificate of occupancy therefor.
>
> § 89-30 Change to prohibited use.
> The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type

> of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

Town Code §§ 89-29, 89-30.

In response, Plaintiffs' counsel requested a citation to the hearing's procedural rules, details covering how the hearing will be conducted, specific violations committed by Plaintiffs, and specific information about the alleged sales of adult material and factual misrepresentations. Am. Compl. ¶¶ 78-83. Besemer provided an amended notice on November 4, 2021, which cited to Town Code § 89-26 and rescheduled the hearing to November 17, 2021. *Id.* ¶ 86; Mem. Supp. Mot. at 5. The amended notice reiterated the general allegations and included seven photographs posted to Plaintiffs' Instagram account advertising merchandise sold in Plaintiffs' previous store. Am. Compl. ¶¶ 88-89.

Plaintiffs' counsel again requested further information about the hearings. *Id.* ¶ 90. Once again, on November 23, Besmer sent an amended notice requiring Plaintiffs to attend a hearing rescheduled for December 14, 2021. ECF No. 19-17. Plaintiffs ultimately did not attend any hearing. Mem. Supp. Mot. at 6. Instead, Plaintiffs sent a letter to Besemer invoking their Fifth Amendment right not to testify. Am. Compl. Ex. 18 at 3, ECF No. 19-18. Plaintiffs then filed a motion seeking an injunction to compel Babylon to issue the certificate. Am. Compl. ¶ 64. After the Court set a briefing schedule for the motion, Babylon issued the certificate to Plaintiffs. *Id.*

Underlying these allegations are comments allegedly made by Assistant Town Attorney Jerry Garguilo ("Garguilo") to Plaintiffs' counsel during this period. *Id.* ¶¶ 32-33. Garguilo said Vergara "operated for 12 years without a Certificate of Occupancy, and used every means possible to fight us, and she should get down on her knees and thank us, instead she is trying to open another store, and we will not allow it," and that if Vergara did receive a Certificate of Occupancy, she would be "under a microscope." *Id.*

## PROCEDURAL HISTORY

Plaintiffs filed the Complaint, ECF No. 1, on December 1, 2021, and filed the Amended Complaint, ECF No. 19, on February 23, 2022. The case was assigned to this Court by consent of the parties on April 23, 2024. ECF No. 53. On May 22, 2025, both parties consented to withdrawal of the second, third, fourth, fifth, seventh, eighth, eleventh, and twelfth causes of action from the amended complaint. ECF No. 70. The parties also consented to dismiss Besemer, Scelfo, and Joseph Wilson ("Wilson") as defendants in their individual capacity. *Id.* Plaintiffs' remaining causes of action under 42 U.S.C. § 1983 are for violations of the Fourteenth Amendment Due Process Clause, First Amendment freedom of commercial speech, and Fourteenth Amendment Equal Protection Clause as applied. Pls. Mem. Opp'n at 8, 14, 17-18, ECF No. 76-17. Plaintiffs also allege that Section 213 is unconstitutionally vague and overbroad. *Id.* at 26. Defendants filed the Motion for summary judgment to dismiss all claims on November 4, 2025. ECF No. 76.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing a lack of genuine dispute over material facts falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then show that a genuine dispute exists. *Id.* The burden to establish elements of the claims aligns with the standard that would be present at trial. *Anderson*, 477 U.S., at 254.

To determine if a dispute is genuine, the court is required to "resolve all ambiguities and draw all permissible factual inferences" in favor of the nonmovant. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). Conclusory allegations or denial "are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

## DISCUSSION

### A. Prior Restraint of Freedom of Speech

Plaintiffs' prior restraint claims fail because they have not identified any expressive speech or conduct that is restricted by Defendants' actions. A prior restraint on speech is a law, regulation, administrative order, or judicial order that suppresses speech or allows government officials to suppress it at their discretion before the speech actually occurs. *See Alexander v. United States*, 509 U.S. 544, 550 (1993); *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005). Prior restraints essentially "give public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). Generally, any prior restraint of free speech has "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). This may include "any governmental restriction that requires a party to obtain permission" before engaging in protected speech, including licensing schemes. *See B & V Greene Inc. v. City of Albany*, 2000 U.S. Dist. LEXIS 18554, at *8 (N.D.N.Y. Dec. 18, 2000).

The sale of expressive material may constitute protected activity under the First Amendment. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 93 (2d Cir. 2006). This specifically

refers to the conduct of selling specific materials, rather than a protection afforded to the merchandise itself. *See id.* at 87 n.6 ("the First Amendment protects speech rather than objects . . . we consider here whether plaintiffs' sale or dissemination of clothing painted with graffiti was predominantly expressive or not."). However, goods sold without an expressive element— "mere commercial goods" —are not protected materials. *Id.* at 93.

Here, the prior restraints in question are the additional requirements Babylon placed on Plaintiffs to receive a building permit: an inventory list and an affidavit from Vergara agreeing to not sell adult toys. In her letter where she stated these demands, Scelfo indicated that Plaintiffs' previous sale of adult toys was the reason she made these requests, rather than any ongoing violation. *See* ECF No. 19-4. This means the restrictions were put in place before Plaintiff has committed any violations at the new location

Plaintiffs have indicated that they do not challenge the legitimacy of the town code under this cause of action, so only actions that deviate from the town code will be considered as potentially unconstitutional prior restraints. Pls. Mem. Opp'n at 7; *see also Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 395 (6th Cir. 2001) (finding that requirements to receive a license that ensure zoning compliance are not prior restraints). As such, it is important to note that these requirements may go beyond what is required under Town Code § 213. The code does not explicitly permit officials to request an inventory list on building permit applications, and Defendants have not claimed nor shown that this request is within their authority. Similarly, it is ambiguous whether or not the language in the affidavit imposes any restriction beyond what is in the town code. Under the several definitions for adult use found in Town Code § 213, each requires adult merchandise to compromise a "substantial or significant portion" of sales. The affidavit replaces this with a promise to not "sell items related to 'adult

use.'" ECF No. 19-5. The other promise made in the affidavit, that Vergara is "willing to forego [her] Certificate of Occupancy should [she] be found to be in violation of the Town Code relating to 'adult use' products" mirrors Town Code § 89-30, which prevents a Certificate of Occupancy holder from changing their use to one prohibited by the town code. However, it is unclear whether the promise to "forego" the certificate waives any procedural steps typically required revoke the permit, since Town Code § 89-26 typically only permits a Certificate of Occupancy to be revoked "after notice to the applicant and an opportunity for the applicant to be heard." The affidavit may not affect these rights, since Vergara only promised to waive her certificate if "found to be in violation." However, if Plaintiffs were forced to waive their right to notice and a hearing before their certificate can be revoked, this would impose a potential prior restraint. Given the present ambiguity, the Court will interpret this in favor of the non-moving Plaintiffs and assume both the inventory list and affidavit impose additional restrictions on Plaintiffs' building permit application and Certificate of Occupancy.

However, to be considered a prior restraint of free speech, the affidavit and inventory list must also threaten to restrict protected speech or the sale of protected material in some way. Plaintiffs claim that they would offer "adult printed and recorded material," which could qualify as protected expressive material under the First Amendment if it is not obscene. *See* Am. Compl. ¶ 159. However, Town Code § 89-29 prevents Plaintiffs from changing their use without approval from the town. Town Code § 89-26(a) also allows a building permit to be revoked if there were any "false statement or misrepresentation as to a material fact in the application," such as misrepresenting the intended use.

Plaintiffs' representations on their application identify no adult printed or recorded material, or any other expressive material protected by the First Amendment. Plaintiffs listed their

intended use on the building permit as a "retail lingerie store." *Id.* ¶ 38. In a letter to the Babylon town attorney, Plaintiffs represented that their store would be "strictly for retail use as a lingerie/clothing store . . . including menswear, wigs, and shoes, with CVS-type products for beauty, health and wellness, scented candles, and lotions." ECF No. 19-2. Plaintiffs further state that "[n]o products deemed to be adult-use toys or any items prohibited by Town code shall be sold or stored." *Id.* Finally, in their inventory list, Plaintiffs represented that they would sell the following items: menswear undergarments, body shapers, wigs, pajamas, hosiery, panties, lingerie, swimwear and coverups, club wear, bags, shoes, garters, robes, nightgowns, incense, candles, skincare, party items and gifts, costume jewelry, moisturizers and massage oils, health and wellness products, and streetwear. ECF No. 19-6. None of these items are inherently expressive. *See Mastrovincenzo*, 435 F.3d at 82 (selling clothing painted with graffiti is not inherently expressive); *Al-Amin v. City of New York*, 979 F. Supp. 168, 173 (E.D.N.Y. 1997) (offering perfume oils and incense in exchange for donations to support Islamic missionary work is not inherently expressive). Nor do Plaintiffs claim their products contain any written messaging, or that any of the represented items have expressive value that would necessitate First Amendment protection. None of the items that Plaintiffs could have sold at this location had expressive value. Thus, the restrictions placed on Plaintiffs' building permit and Certificate of Occupancy cannot be considered prior restraints of Plaintiffs' freedom of speech under the First Amendment. Plaintiffs' prior restraint claims are dismissed.

**B. Freedom of Commercial Speech**

Plaintiffs' First Amendment retaliation claim fails because Plaintiffs do not adequately show that Babylon's actions were in response to their commercial speech or that their commercial speech was chilled as a result. To plead a First Amendment retaliation claim a plaintiff must show

"(1) he has an interest protected by the First Amendment, (2) defendants' actions were motivated or substantially caused by his exercise of that right, and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). A plaintiff must have "specific proof of improper motivation" to survive a motion for summary judgment. *Id.* The plaintiff must prove that retaliatory act would not have been taken *but for* improper motivation. *Gonzalez v. City of New York*, 845 Fed. Appx. 11, 14 (2d Cir. 2021). Even otherwise lawful actions can be unlawful if done in retaliation of protected speech. *See Allah v. Poole*, 506 F. Supp. 2d 174, 189 n.13 (W.D.N.Y. 2007).

In addition, plaintiffs must show that their First Amendment rights were "actually chilled." *Davis v. Village Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir. 1978). "[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

Here, Defendants do not contest Plaintiffs' assertion that their online advertising is protected commercial speech. Next, Plaintiffs allege two specific harms: attempting to revoke Vergara's building permit and preventing Vergara from operating a retail lingerie store within the Town of Babylon.

The attempt to revoke Vergara's building permit likely refers to the hearings scheduled by Babylon to determine if Plaintiffs violated Town Code § 213. In letters to Plaintiffs' counsel, Besemer clearly stated that the hearings were being held in response to advertising posted by Plaintiffs on their Instagram page. ECF No. 19-15. However, this resembles an attempt to legitimately enforce the town code, rather than improper retaliation. The postings seemed to indicate that Plaintiffs were actively violating Town Code § 213, and Defendants conduct is an attempt to determine whether a violation had occurred. As such, Plaintiff is unable to adequately

allege harm that occurred from the act. Defendants did not immediately revoke Plaintiffs' permit to punish the speech; instead, they scheduled a hearing to determine whether a violation had occurred. Plaintiffs even received their Certificate of Occupancy on December 2, 2021, and have not alleged that the town has since revoked the certificate. Nor have Plaintiffs identified any upcoming attempts to revoke the certificate on the basis of their advertisements alone. As a result, without a specific harm, this retaliation claim fails.

Preventing Vergara from operating a retail lingerie store likely refers to the threat of future retaliation. This would include the comments allegedly made by Babylon town attorney that the town "will not allow" Vergara to open a store and that she would be "under a microscope" if she did. While the comments are not befitting a town employee, Plaintiffs have not shown a causal connection between the comments and the commercial speech. In fact, the alleged comment clearly states its motive: that Vergara "operated for 12 years without a Certificate of Occupancy, and used every means possible to fight [Babylon]." Without specific proof that the comments were motivated instead by Plaintiffs' commercial speech, the claim for retaliation cannot stand.

As such, Plaintiffs' claims for retaliation against their commercial speech are dismissed.

**C. Procedural Due Process**

Plaintiffs' procedural due process arguments must fail since they were raised for the first time in their response to Defendants' Motion for summary judgment. "[C]ourts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment." *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."); *Lyman v. CSX Transp., Inc.*, 364 Fed. Appx. 699, 702 (2d Cir. 2010) (affirming the district court's

decision to dismiss arguments raised for the first time in response to a motion for summary judgment); *Dunn v. Hart*, 2016 U.S. Dist. LEXIS 134825, at *2 n.1 (S.D. Ga. Sept. 28, 2016) ("Plaintiff may not resurrect previously dismissed claims . . . at [the summary judgment] stage.").

Here, Plaintiffs initially raised procedural due process claims in their fourth of cause of action, but later voluntarily consented to the withdrawal of this claim. ECF No. 70; s*ee* Am. Compl. ¶¶ 211-13. Since Plaintiffs' withdrew their procedural due process claim previously, they cannot resurrect it or raise a different procedural due process claim for the first time in response to Defendants' Motion for summary judgment. As such, Plaintiffs' procedural due process arguments will not be considered.

**D. Equal Protection Class of One**

Plaintiffs' class of one claim under the Equal Protection Clause fails to identify a similarly situated comparator. An equal protection claim can be brought by a class of one if the plaintiff was (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To be considered similarly situated, the comparator's circumstances must be "*prima facie* identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (quotations omitted). Plaintiffs must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

Plaintiffs allege that Spencer's Gifts ("Spencer's") is zoned similarly, while still being permitted to sell adult merchandise. However, Spencer's is not located within 1000 feet of any school, library, church or other place of religious worship, park, playground, playing field, or residential lot, as required by the town code. Russo Aff. at 5, ECF No. 76-13; Town of Babylon, NY, Town Code § 213-378. Conversely, Cupid's is located 379.89 feet from Sound Heaven

Church, 440.49 feet from a residential zone on Quail Run Drive, and 529.67 feet from the Ascent School for Individuals with Autism. Russo Aff. at 4.

Any store at Spencer's location can sell adult toys under Town Code § 213, while no store at Cupid's location can, regardless of the volume of adult products. It is Cupid's and Spencer's differing circumstances that are responsible for different outcomes under Town Code § 213-378, rather than discriminatory enforcement by Babylon. Thus, the two stores are not similarly situated. Since Plaintiffs did not identify a similarly situated comparator, the class of one claim must fail.

**E. Vagueness As Applied**

Plaintiffs' claim that Section 213 is unconstitutionally vague as applied fails due to a lack of standing. To have standing to bring an as applied claim, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff bears the burden of "clearly" alleging facts to establish standing at the pleading stage. *Id.*

Plaintiffs claim they have been injured because Defendants deprived Plaintiffs of their property interests in their leasehold, their right to use the premises, the Building Permit, and the Certificate of Occupancy without due process. However, none of these injuries are supported by Plaintiffs' factual record.

First, Plaintiffs are currently operating their store. They have not alleged that the town seeks to remove them from the premises or otherwise deprive them of their property interest in the store based on Town Code § 213.

Second, under Town Code §§ 89-26, 89-29, Plaintiffs right to use is already restricted to the intended use represented on their building permit application. Plaintiffs represented on multiple

occasions that they would only sell lingerie, clothing, beauty products, and other similar items. See ECF No. 19-2; 19-5; 19-6. None of the items described are implicated under Town Code § 213, nor has the town tried to enforce Section 213 against the sale of these items. For Plaintiffs specifically, the provisions of Section 213 do not further limit their right to use the premise. Thus, Town Code § 213 does not currently injure Plaintiffs' right to use.

Third, although the town delayed issuing the certificate past the ten-day window required under Town Code § 213-20, the town attempted on multiple occasions to schedule hearings to determine whether they could issue the certificate. *See* ECF No. 19-11; 19-13; 19-15. The town accommodated Plaintiffs' requests to reschedule the hearing and provided information supporting their reason for delaying in letters to Plaintiffs. *See* ECF No. 19-13; 19-15. Plaintiffs still refused to attend any of the hearings. Plaintiffs cannot demonstrate a denial of due process in the delay before their permit since they refused to attend hearings regarding the decision and took no other action within the local or state system to compel a decision. *See C.C.S.com USA, Inc. v. Gerhauser*, 518 Fed. Appx. 1, 3-4 (2d Cir. 2013) (finding that a delay in the permit application process was not a denial of due process due to plaintiff's failure to pursue an Article 78 hearing to compel a decision).

Fourth, the Town of Babylon *did* ultimately issue a Certificate of Occupancy to Plaintiffs on December 2, 2021, despite Plaintiffs' refusal to attend any scheduled hearings. Again, Plaintiffs have not provided evidence to suggest the town is currently taking any steps to revoke their certificate.

As such, Plaintiffs do not have standing to bring an as-applied challenge to Town Code § 213, since they have not clearly alleged facts to support an injury to support their vagueness as applied claim.

**F. Facial Vagueness and Overbreadth**

Plaintiffs' claim that Section 213 is facially unconstitutional under the First Amendment fails because the ordinance is a valid time, place and manner restriction.

*1. Overbreadth*

All overbreadth challenges are facial, rather than as applied. *United States v. Hilliard*, 2022 U.S. Dist. LEXIS 127060, at *5 (E.D.N.Y. July 18, 2022). Overbreadth claims allow plaintiffs to assert the rights of third parties. *Dickerson*, 604 F.3d at 749. An overbreadth challenge seeks to invalidate a law which punishes a "'substantial' amount of free speech . . . 'in relation to the statute's plainly legitimate sweep[.]'" *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (citing *Broadrick v. Okla.*, 413 U.S. 601, 615 (1973)). However, "[o]nly a statute that is substantially overbroad may be invalidated on its face." *Houston v. Hill*, 482 U.S. 451, 458 (1987). As a result, overbreadth challenges almost never succeed against "a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Hicks*, 539 U.S. at 123.

When evaluating an overbreadth or facial vagueness challenge, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 (1982). Here, the ordinance does reach constitutionally protected conduct, specifically, the sale of expressive adult material. The definitions of adult bookstores, adult novelty stores, adult stores, adult video stores, and other adult commercial facilities encompass certain expressive goods, such as books and films.

However, the government can still place restrictions on the time, place, or manner of protected speech, if the restriction is not content-based, narrowly tailored to serve a significant government interest, and leaves alternative channels open. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Indeed, content-neutral restrictions on expressive adult materials have been

typically upheld on this basis. *See Renton v. Playtime Theatres*, 475 U.S. 41, 47 (1986) (finding that an ordinance that prohibited adult motion pictures within one thousand feet of residential zones, churches, and schools was a valid time, place, and manner restriction).

Here, the ordinance prohibits sale of adult materials only within a defined geographic area: within one thousand feet of a residential zone, within five hundred feet radius of another adult use, or within one thousand feet of a school, library, place of religious worship, park, playground or playing field. Plaintiffs have not alleged that the provision is content-based and described the ordinance beyond their specific challenge as "in all probability, otherwise a valid content neutral time, place, and manner of regulation." Pls. Mem. Opp'n at 7. The town also notes the preservation of property values, preventing neighborhood blight, and mitigating crime as a substantial government interest. The restrictions are narrowly tailored to cover stores that sell a substantial volume of adult materials within a limited geographical area. Finally, Plaintiffs have not shown that the specified range prevents alternative channels. In fact, they have shown the opposite by identifying Spencer's: a shop that sells adult products within a permitted area of the town. Any expressive adult materials covered by the statute can be sold outside the prohibited areas.

As a result, the ordinance does not extend to cover a substantial amount of activity protected by free speech. Plaintiffs have also not shown that the ordinance was addressed to or necessarily associated with speech. As such, Plaintiffs' overbreadth claim is dismissed.

*2. Facial Vagueness*

Plaintiffs separately fail to meet the standard required in a facial void-for-vagueness challenge. A vagueness inquiry is limited "to the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and . . . to the interpretation of the statute given by those charged with enforcing it." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)

(quotations omitted). A statute may be unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). This ensures that all laws provide both fair notice of prohibited acts and "minimal guidelines to govern law enforcement." *Thibodeau v. Portuondo*, 486 F.3d 61, 65-66 (2d Cir. 2007) (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). Fair notice is determined based on "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices[.]" *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008) (citations and quotations omitted).

The Constitution does not require "mathematical certainty" from the language of a statute. *Grayned*, 408 U.S. at 110. However, when a statute "is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (citations and quotations omitted); *see also Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982) ("If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.").

A facial vagueness claim also allows plaintiffs to circumvent the general rule preventing them from asserting the rights of third parties, similar to overbreadth. *Dickerson v. Napolitano*, 604 F.3d 732, 749 (2d Cir. 2010). A facial challenge claims that a statute is "so fatally indefinite that it cannot constitutionally be applied to anyone." *Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018). Facial challenges are the most difficult because typically "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). By this standard, if the statute was constitutionally applied to

the challenger in the past, the court "need not consider the statute's applicability in other situations." *Id.* at 111.

However, Town Code § 213 can be constitutionally applied in many situations. To demonstrate an extreme example, the town ordinance would provide notice that a store exclusively selling objects resembling human sex organs cannot open a hundred feet from a school. Many other enforceable situations exist, under different types of adult merchandise or different percentages of floor area. Plaintiffs themselves were found to have violated this ordinance at their past location.

The definition of adult products used by the town do not prevent the ordinance from being enforced in the aforementioned circumstances. This Circuit has held that the phrase "substantial or significant portion" is not unconstitutionally vague. *See VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 182 (2d Cir. 2010) (finding that a zoning restriction banning a "substantial or significant portion" of adult sales was not unconstitutionally vague). Section 213 specifies beyond the restriction in *VIP of Berlin* by providing criteria by which a substantial and significant portion can be judged and a percentage cutoff that guarantees applicability.

Therefore, under the standard required for a facial vagueness claim, Plaintiffs' claim has failed to show there are no valid circumstances where Town Code § 213 can be applied. Plaintiffs' facial void-for-vagueness claim is dismissed.

**G. Defendants Joseph Wilson and Timothy Besemer**

Plaintiffs fail to adequately allege involvement of Wilson or Besemer.[1] As always, a claim against a defendant must also be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[1] Defendant's qualified immunity argument and request to dismiss Scelfo are not considered because they were raised for the first time in Defendant's reply. Arguments may not be raised for the first time in a reply, since it denies the other party the chance to respond. *Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 484 n.28 (S.D.N.Y.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim must have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This must extend beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* Instead, plaintiffs must clearly state claims against each named defendant to provide adequate notice of the claims against individual defendants. *Ramjas v. Pub. P'ship LLC*, 2026 U.S. Dist. LEXIS 143907, at *4 (E.D.N.Y. June 29, 2026). Beyond that, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). The complaint must "allege facts establishing the personal involvement" of individual defendants. *Costello v. City of Burlington*, 632 F.3d 41, 48-49 (2d Cir. 2011).

Neither Wilson nor Besemer are actually named in any cause of action in the Amended Complaint. They are only named in the factual allegations or generally referred to as town employees or defendants in the claims. In fact, Wilson is only named one time, regarding his promise to provide information about the hearing. Am. Compl. ¶ 90. Meanwhile, Besemer is named twice, allegedly writing the Inspector's Report requiring fire underwriter's certification and sending notices to Plaintiffs about their scheduled hearing. *Id.* ¶¶ 59, 70, 85. Regarding the claims, the term "Defendant employees" is used in Plaintiffs' Due Process claim, while "Defendants" is used in the Equal Protection and the Vagueness and Overbreadth claims. *Id.* ¶¶ 169, 277-81, 294.

The Due Process claim's only use of "Defendant employees" alleges that they were engaged in "unconstitutional prior restraint of constitutionally protected First Amendment speech." *Id.* ¶ 169. It provides no additional factual allegations that support the claim against Wilson or Besemer, since all the other allegations in the claim only named the Town of Babylon.

---

2003); s*ee, e.g.*, *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993), *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999), *Hui Wang v. Omni Hotels Mgmt. Corp.*, 607 F. Supp. 3d 219, 229-30 (D. Conn. 2022).

Nor do the previous factual allegations outside of the claims adequately describe Wilson's or Besemer's personal involvement in restraining Plaintiffs' First Amendment speech. Plaintiffs' Due Process claim merely accuses Wilson and Besemer of causing harm, lacking the necessary personal involvement or factual allegations to establish a claim.

Plaintiffs' Commercial Speech claim makes no mention of Wilson or Besemer, nor uses any general reference to defendants that could incorporate them. All allegations are solely directed at the Town of Babylon.

The Equal Protection claim uses the plural "Defendants" when describing actions Defendants did not take towards Spencer's. *Id.* ¶¶ 277-81. However, the affirmative acts described either specify the Town of Babylon or generally reference the town code. Thus, Wilson and Besemer are not alleged to have taken any action to personally involve themselves with Plaintiffs' Equal Protection claim.

Finally, Plaintiffs' Vagueness and Overbreadth claim mentions "Defendants" by stating that the town code places "unlimited discretion . . . in the hands of Defendants." *Id.* ¶ 294. However, Plaintiffs' allegations here are not targeted at Wilson or Besemer, since this claim focuses on the constitutionality of the town code, rather than any individual actions by the town officials.

Thus, none of the causes of action plainly state a claim or even name Wilson or Besemer. Even if construed generously, none of the mentions of defendants collectively is sufficient to allege a claim against Wilson or Besemer. Nor do the factual allegations against Wilson and Besemer in the complaint provide sufficient support on their own. In addition, all outstanding claims against Defendants have been dismissed. Thus, Wilson and Bessemer are dismissed as defendants.

**H. John and Jane Doe Defendants**

Plaintiffs have consented to the dismissal of John and Jane Doe Defendants. Pls. Mem. Opp'n at 32. Accordingly, they are dismissed.

**CONCLUSION**

For the reasons above, this Court GRANTS Defendants' Motion for Summary Judgment and DISMISSES the Amended Complaint in its entirety.

**SO ORDERED.**

/s/

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
September 18, 2026